Vickie Lashun TOLBERT, Appellant,

v.

The STATE of Texas.

No. PD–0265–09.

Court of Criminal Appeals of Texas.

March 17, 2010.

---

5. *Trevino v. State,* 577 S.W.2d 242 (Tex.Crim. App.1979).

Donald R. Scoggins, Dallas, TX, for appellant.

John A. Stride, Asst. Dist. Atty., Denton, Jeffrey L. Van Horn, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, KEASLER and COCHRAN, JJ., joined.

The issue presented in this case is whether the trial court was required to *sua sponte* instruct the jury on the lesser-included offense of murder in appellant's capital-murder prosecution. We decide that the trial court was not required to *sua sponte* provide this jury instruction.

■ Appellant was charged with capital murder (murder during the course of a robbery). The State presented evidence that supports a finding that appellant murdered the victim, whom appellant knew, during the course of robbing him. The evidence could also support a finding that appellant did not decide to rob the victim until after she murdered him, which is not capital murder under Texas law. *See Ibanez v. State*, 749 S.W.2d 804, 807 (Tex.Cr. App.1986) (a killing followed by unrelated taking of property is not capital murder).[1]

---

1. The court of appeals decided that there is some evidence to support a finding that ap-

pellant is guilty only of murder because this evidence supports a finding that appellant did

Even though the parties had discussed several lesser-included offense scenarios such as murder and robbery during voir dire,[2] appellant's theory at trial was that the jury should acquit her of the charged capital-murder offense because "she didn't do it" and she was not guilty of anything. Appellant also pointed the finger at one of appellant's acquaintances as the one who murdered the victim. And appellant stated that she had "no objection" to the Court charging the jury only on capital murder even in the face of the State's request for "a lesser included and parties," which the trial court denied.

> [THE COURT]: The Court is going to go on the record for ascertaining whether there is any objection to the Court's charge in Cause F07–00762, styled the State of Texas versus Vickie Lashun Tolbert.
>
> [STATE]: The only thing, Your Honor, we were asking for is a lesser included and parties.
>
> [THE COURT]: The Court will overrule the State's request. What says the defense?
>
> [DEFENSE]: No objection.

During its deliberations, the jury sent out a note asking whether it should "consider lesser included charges" if it believed that the robbery "was an afterthought" and whether it made a difference "if the robbery was an afterthought to a crime of passion." The trial court responded that the jury had "all the law and the evidence in the case" and that it should "refer to the Court's Charge for the answers to your questions and continue your deliberations."[3] The jury convicted appellant of capital murder, and, with the State not having sought the death penalty, appellant was sentenced to life.

On direct appeal, appellant apparently rethought her "all or nothing" trial strategy and claimed that the trial court should have *sua sponte* instructed the jury on the lesser-included offense of murder. Appellant claimed that "the trial court erred in not submitting to the jury either before arguments on guilt innocence [sic] began, or when requested by a note from the jury during their deliberations, an instruction on the lesser included offense of murder." Appellant further claimed that the totality of the circumstances of this case required the trial court to *sua sponte* instruct the jury on the lesser-included offense of murder because "the jury panel was voir dired on the lesser included offense, testimony was presented by two of the witnesses which supported a potential verdict of the lesser included offense of murder, the State requested the lesser included offense charge, and the jury in a note to the court

---

not decide to take the victim's property until after she murdered him. *See Tolbert v. State*, No. 05–07–00920–CR, slip op. at 8–9, 2008 WL 2747189 (Tex.App.-Dallas, July 16, 2008) (not designated for publication); *see also Hall v. State*, 225 S.W.3d 524, 536 (Tex.Cr.App. 2007) (setting out two-part test for when a defendant is entitled to her requested lesser-included-offense instruction). We did not exercise our discretionary authority to review this decision. For purposes of this case, we will assume that there is some evidence that would support a finding that appellant is guilty only of murder.

2. For example, the State explained during voir dire that appellant would be guilty only of murder if the jury did not believe beyond a reasonable doubt that appellant murdered the victim during a robbery or attempted robbery.

3. The record does not reflect that appellant objected to the trial court's response to this jury note or that appellant requested any additional jury instructions on the lesser-included offense of murder. Thus, the record appears to reflect that it was still appellant's strategy to go for an outright acquittal after the jury sent out the note.

also requested instructions on the lesser included offense."

The State responded that appellant's statement that she had "no objection" to the Court's charge estopped her from claiming that the trial court was required to *sua sponte* instruct the jury on the lesser-included offense of murder. The State alternatively claimed that no "egregious error" resulted from the trial court's failure to *sua sponte* instruct the jury on this lesser-included offense because appellant adopted "an all or nothing posture by putting the jury to the election of [convicting appellant] of capital murder or an acquittal." The State further argued that "the fact that the jury's verdict coupled with a jury note indicate Appellant's strategy backfired is ... not the trial court's egregious error."

Based on this Court's decision in *Bluitt v. State*, the court of appeals decided that appellant stating that she had "no objection" to the Court's charge did not operate as an estoppel, but was the equivalent of a failure to object to the trial court's "error" in not *sua sponte* instructing the jury on the lesser-included offense of murder. *See Tolbert*, slip op. at 7–10.[4] The court of appeals reversed and remanded for further proceedings after finding that this unobjected-to jury charge "error" egregiously harmed appellant under this Court's decision in *Almanza v. State*.[5] *See Tolbert*, slip op. at 7–10. We granted review of the following ground in the State's petition for discretionary review:

Criminal jury charges contain "law applicable to the case," and often "defensive issues." To obtain review on

appeal, complaints involving "law applicable to the case" need not be preserved at trial but "defensive issues" must be preserved. Did the Fifth Court of Appeals wrongly hold that where a defendant states "no objection" to the proposed charge and then complains on appeal about the omission of a lesser-included offense instruction, the *Almanza* standard applies?

■ The court of appeals' opinion appears to assume that the trial court erred in not *sua sponte* instructing the jury on the lesser-included offense of murder and then addressed whether this jury-charge "error" egregiously harmed appellant under *Almanza* after rejecting the State's estoppel argument based on appellant's statement that she had "no objection" to the jury charge. This was error. Before applying *Almanza*'s egregious-harm standard for unobjected-to jury charge error, the court of appeals should have first decided whether it was "error" for the trial court not to *sua sponte* instruct the jury on the lesser-included offense of murder. *See Posey v. State*, 966 S.W.2d 57, 61 (Tex.Cr.App.1998) (*Almanza* does not apply unless the appellate court first finds error in the jury charge).

This requires a determination of whether a jury instruction on the lesser-included offense of murder was "applicable to the case." *See Posey*, 966 S.W.2d at 62 (trial court has statutory duty to *sua sponte* submit a charge setting forth the law "applicable to the case."). In *Posey*, this Court held that a trial court is not statutorily required to *sua sponte* instruct the

---

4. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Cr.App.2004) (a defendant's statement of "no objection" to erroneous jury charge "shall be deemed equivalent to a failure to object" and the defendant "may raise such unobjected-to [jury] charge error on appeal, but may not

obtain a reversal for such error unless it resulted in egregious harm").

5. 686 S.W.2d 157, 171 (Tex.Cr.App.1985) (op. on reh'g).

jury on a mistake of fact "defensive issue" because a "defensive issue" is not "applicable to the case" unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge. *See id.*[6]

The State argues on discretionary review that appellant should not be permitted to pursue a strategy, which in hindsight she may now regret, of "going for broke" in the trial court hoping that the jury would acquit her of capital murder and then, with that strategy having failed, successfully pursue a quite different strategy on appeal "with the trial court never having [had] the opportunity to pass on the latter." The State argues in its brief:

> It is evident that Tolbert, after she learned the jury had sent out a note indicating an interest in lesser-included offenses, simply regretted her trial strategy in going for broke—in not joining the State in its request for lesser-included offenses and hoping the jury would not find capital murder proved and, thereby, acquit her.
>
> \*　　\*　　\*
>
> But the way Tolbert would have the law, a defendant could have one strategy at trial that failed and then spring quite a different strategy on appeal, with the trial court never having the opportunity to pass on the latter, and still prevail. This is the forbidden "two bites at the apple." Such an opportunity would serve only to undermine the integrity of the "main event" of trial by encouraging

improper gamesmanship—*i.e.,* sandbagging the prosecution and the trial court—so as to obtain a windfall on appeal.

(Footnote and citation to record omitted).

■ These considerations underscore our case-law stating that lesser-included instructions are like defensive issues and that a trial court is not statutorily required to *sua sponte* instruct the jury on lesser-included offenses because these issues "frequently depend upon trial strategy and tactics." *See Delgado v. State,* 235 S.W.3d 244, 249–50 (Tex.Cr.App.2007) ("The trial judge has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar *sua sponte* duty to instruct the jury on all potential defensive issues, lesser included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics.") (footnote omitted); *Posey,* 966 S.W.2d at 62 ("defensive issue" is not "applicable to the case" unless the defendant "timely requests the issue or objects to the omission of the issue in the jury charge"); *Druery v. State,* 225 S.W.3d 491, 512–13 (Tex.Cr.App.2007) (Keller, P.J., concurring) ("a lesser-included offense instruction is a kind of defensive issue" citing *Bufkin v. State,* 207 S.W.3d 779, 782 n. 10 (Tex.Cr.App.2006), which cited *Campbell v. State,* 614 S.W.2d 443, 445–46 (Tex. Cr.App.1981)).[7] In *Delgado,* we quoted

**6.** Our decision in *Posey* was intended "to discourage parties from sandbagging or lying behind the log" and to discourage a defendant from retrying the case on appeal under a new defensive theory, effectively giving the defendant "two bites at the apple." *See Posey,* 966 S.W.2d at 63.

**7.** This case presents the question whether the trial court was *required* to *sua sponte* instruct the jury on the lesser-included offense of mur-

der. This case does not present the question and does not require us to decide whether the trial court in its discretion *may* have provided this instruction. *See generally Grey v. State,* 298 S.W.3d 644, 652 (Tex.Cr.App.2009) (Hervey, J., concurring); *Grey,* 298 S.W.3d at 652–58 (Cochran, J., concurring) (discussing "when a trial court *must* grant a request by either the defense or State for a lesser-included instruction and when it *may* include such

with approval the following excerpt from the Dix and Dawson treatise on Criminal Practice and Procedure:

> Because of the strategic nature of the decision, it is appropriate for the trial court to defer to the implied strategic decisions of the parties by refraining from submitting lesser offense instructions without a party's request. It is clear that the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one. Likewise, any error in the improper submission of a lesser included instruction is waived if the defense fails to object to the instruction.[8]

■ We, therefore, decide that the trial court had no duty to *sua sponte* instruct the jury on the lesser-included offense of murder and that a jury instruction on this lesser-included offense was not "applicable to the case" absent a request by the defense for its inclusion in the jury charge. That the State in this case unsuccessfully requested "a lesser included" did not make a lesser-included offense instruction on murder "applicable to the case." The trial court denied the State's request, and appellant failed to also make her desire for such an instruction known to the trial court.[9] This was consistent with appellant's "all or nothing" strategy of going for an outright acquittal. That this strategy proved unsuccessful does not make a lesser-included-offense instruction on murder "applicable to the case" requiring a decision that the trial court was required to *sua sponte* provide this instruction that the record clearly reflects appellant did not want.[10] *See Haynes v. State*, 273 S.W.3d

---

8. *See* 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 36.50 at 202 (Supp.2006).

9. We believe that, under these circumstances, appellant cannot rely on the State's request for "a lesser included" to make an instruction on the lesser-included offense of murder "applicable to the case." *Compare Woerner v. State*, 576 S.W.2d 85, 86 (Tex.Cr.App.1979) (defendant preserved error in State's jury argument by, in effect, expressly adopting the co-defendant's objection to the argument). On this record, the State's request for "a lesser included" does not remove this case from the general rule that appellant was required to request an instruction on murder or object to its omission in the jury charge in order to make a jury instruction on that offense "applicable to the case," requiring the trial court to provide this instruction. *See Delgado*, 235 S.W.3d at 249–50; *Posey*, 966 S.W.2d at 62. We believe that the record clearly reflects that appellant had no desire for a jury instruction on the lesser-included offense of murder. This was her call to make as a matter of trial strategy and tactics. *See Delgado*, 235 S.W.3d at 249 (whether to request lesser-included-offense instructions

an instruction, with or without a request") (emphasis in original).

"frequently depend on trial strategy and tactics"); *Posey*, 966 S.W.2d at 63 (strategic decisions and decisions as to the defensive theory of a case are generally left to the lawyer and the client).

10. In *Grey*, 298 S.W.3d at 654–55, Judge Cochran wrote in her concurring opinion:

> But sometimes neither the State nor the defense request an instruction on a lesser-included offense even though the law and the evidence would clearly support one. Each party may invoke an "all or nothing" strategy that permits it to forego instructions on a lesser-included offense, in effect forcing the jury to choose between conviction of the greater offense or outright acquittal.
>
> Under this "gambling" or "party autonomy" rationale, the participants may gamble, but they do so at their own peril. If the defense and prosecution do not request an instruction on a lesser-included offense, they have waived their right to complain on appeal that the judge was required to give one. And, because this "all or nothing" model is a valid trial strategy, defense counsel is not ineffective for declining to request a lesser-included-offense instruction.
>
> *Id.* (footnotes omitted).

183, 191 (Tex.Cr.App.2008) (Johnson, J., concurring) ("Regardless of which side chooses to 'go for broke,' it may be a valid strategic choice from which neither side should be rescued."). Therefore, there was no jury-charge "error" to which *Almanza*'s egregious harm analysis would apply. *See Posey*, 966 S.W.2d at 61 (*Almanza* does not apply unless the appellate court first finds error in the jury charge).

It has been suggested that we should rescue appellant from her unsuccessful "all or nothing" trial strategy by deciding that a jury instruction on the lesser-included offense of murder became "applicable to the case" when the State unsuccessfully requested "a lesser included." According to this argument, and with the assumption we have made that there is some evidence that would support a finding that appellant is guilty only of murder, the trial court was obligated to grant the State's request for "a lesser included" thus making a jury instruction on the lesser-included offense of murder "applicable to the case." This argument essentially is that appellant may rely on the State's unsuccessful request for "a lesser included" to make the lesser-included offense of murder "applicable to the case" for all purposes even though the record clearly reflects that appellant did not want this instruction (at least until the jury convicted her of capital murder).[11]

We reject this argument. The issue in this case is not whether the trial court should have granted the State's request for "a lesser included." The issue in this case is whether the trial court had a duty to *sua sponte* include this instruction in the jury charge. The State's unsuccessful request for "a lesser included" has no bearing on this question.

We further note that a State's unsuccessful request for a lesser-included-offense instruction generally could not become "applicable to the case" unless an appellate court decides that the evidence is insufficient to support the conviction on the greater offense (which has not occurred in this case). Then the State's unsuccessful request for a lesser-included-offense instruction could become "applicable to the case," not for determining whether the trial court should have *sua sponte* submitted this instruction, but for determining whether the trial court's judgment can be reformed to reflect a conviction for any requested lesser-included offenses that the evidence supports. *See Haynes*, 273 S.W.3d at 187 (appellate court cannot reform trial court's judgment to reflect conviction for unrequested lesser-included offense that was not submitted in jury charge); *Collier v. State*, 999 S.W.2d 779, 782–83 (Tex.Cr.App.1999) (same).[12]

---

11. We further note that, had the trial court submitted a lesser-included-offense instruction on murder and had the jury convicted appellant of that offense, appellant could complain on appeal that the trial court should not have submitted this jury instruction given appellant's "all or nothing" trial strategy. It, therefore, appears that appellant could complain on appeal no matter what the trial court did unless, of course, appellant's "all or nothing" strategy resulted in the jury acquitting her of the greater offense. Our decision in *Posey* was meant to discourage this type of gamesmanship by requiring a party to request inclusion of defensive-type issues in the jury charge before that party may complain on

appeal about their absence in the charge. *See Posey*, 966 S.W.2d at 63 (decision intended "to discourage parties from sandbagging and lying behind the log" and to discourage a defendant from retrying the case on appeal under a new defensive theory, effectively giving the defendant "two bites at the apple").

12. We note that our decision in *Haynes* left open the question whether an appellate court may reform a judgment to reflect a conviction for a lesser-included offense when "one of the parties asked for but was denied" this lesser-included-offense instruction. We further note that accepting the argument that appellant can rely on the State's unsuccessful request

We further note that our decision in *Stephens v. State,* also relying on the over-reaching-by-the-State rationale, did not permit the State to rely on a defendant's unsuccessful request for a lesser-included-offense instruction on murder in rejecting the State's claim that double-jeopardy principles did not prevent it from prosecuting the defendant for murder after an appellate court had decided that the evidence was insufficient to support the aggravating element of the defendant's conviction for capital murder. *See Stephens v. State,* 806 S.W.2d 812, 817–18 (Tex.Cr.App. 1990) (rejecting State's claim that "since it did not oppose [the defendant's] request for a lesser included offense instruction, that it should not be penalized for the trial court's failure to include the lesser offense in the charge to the jury"); *see also Ex Parte Feryl John Granger,* 850 S.W.2d 513, 519–20 (Tex.Cr.App.1993) (distinguishing *Stephens* on basis that this Court in *Stephens* was "careful to point out repeatedly ... that at the original trial, the State had chosen not to request an instruction on the lesser included offense of rape. *In other words, the State had, at the first trial, failed to pursue the lesser included offense charge after jeopardy had attached to it and was, therefore, forever barred from prosecuting it again.*") (emphasis in original). In *Stephens,* the State was not permitted to rely on the defendant's un-successful request for a lesser-included-offense instruction to make this instruction "applicable to the case."

The judgment of the court of appeals is reversed, and the case is remanded there for further proceedings not inconsistent with this opinion.

KELLER, P.J., filed a concurring opinion.

KEASLER, J., filed a concurring opinion.

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J., joined.

HOLCOMB, J., filed a dissenting opinion in which JOHNSON, J., joined.

PRICE, J., dissented.

KELLER, P.J., filed a concurring opinion.

The question here is pretty basic: who gets to decide the defendant's theory of the case? The Court says the defendant does; Judge Johnson says the trial judge does. I'll go with the Court.

This is an important case, because what is at issue is who has the right to decide what theories go to the jury. If we were to hold that the judge erred in failing to include an instruction on murder here, we would be telling judges to include lesser-

---

for "a lesser included" to make it "applicable to [this] case" would support a decision that the State could rely on a defendant's unsuccessful request for a lesser-included-offense instruction to permit reformation when the State "goes for broke" and an appellate court decides that the evidence is insufficient to support a conviction for the greater offense. This arguably would be inconsistent with the overreaching-by-the-State rationale in *Haynes* and *Collier. See Haynes,* 273 S.W.3d at 185–86 ("Judge Mansfield's lead opinion in *Collier* was based in large part on the rationale that in cases like this the State 'overreaches' or 'goes for broke' by pursuing a trial strategy of not requesting a lesser-included[-]offense instruction to make it more likely it will obtain a conviction for the greater offense that the evidence might only 'weakly' support. According to this opinion, if the jury then convicts the defendant of the greater offense, but an appellate court later decides that the evidence is insufficient to support one of its elements, permitting the appellate court to reform the judgment to reflect a conviction for a supported-by-the-evidence lesser-included offense would 'rescue [the State] from a trial strategy that went awry.' ") (footnote and citation to authority omitted).

included-offense instructions regardless of whether the parties want them. We could do that, but it would be something new, it is not required by the law, and, on top of that, it is a bad idea.

Under Judge Johnson's opinion, the next time a defendant wants to go for broke, as Tolbert did here, the judge would have to give the charge on murder anyway. Even if the defendant objected, the judge would have to give it.

This case is not like *Bluitt* because *Bluitt* didn't involve strategy. The jury charge in that case did not include an instruction on the burden of proof for extraneous offenses. If there were ever a case in which a defendant could benefit from the lack of such an instruction, then *Bluitt* might be relevant to this case. But we correctly assumed in *Bluitt* that strategy was not an issue to be included in our analysis.

I agree with the Court, and with Professors Dix and Dawson, that "because of the strategic nature of the decision, it is appropriate for the trial court to defer to the implied strategic decisions of the parties by refraining from submitting lesser offense instructions without a party's request."

I join the opinion of the Court.

KEASLER, J., filed a concurring opinion.

I join the Court's opinion but write separately because I also believe that Tolbert is estopped from challenging the trial judge's failure to sua sponte instruct the jury on the lesser-included offense of murder.

As observed by the majority, in *Bluitt v. State*, we held that "[a]n affirmative denial of objection ... shall be deemed equivalent to a failure to object."[1] *Bluitt*'s attorney stated that he had no objection to the jury charge.[2] On appeal, the State claimed that Bluitt waived his complaint that the trial judge erred by refusing to sua sponte instruct jurors that they could consider extraneous offense evidence only if they believed that Bluitt committed the extraneous offenses beyond a reasonable doubt.[3] We rejected the State's argument, reasoning that an affirmative refusal to object is governed by *Almanza*'s[4] failure to object standard; thus, charge error may nevertheless be raised on appeal but a reversal is not warranted unless there is egregious harm.[5] *Bluitt*'s strict dichotomy, however, did not address the notion of estoppel, perhaps because of the State's failure to posit such an argument.

In *Prystash v. State*, we held that Prystash was estopped from complaining on appeal about the trial judge's failure to include an anti-parties special issue in the jury charge because his attorney had affirmatively asked the trial judge to leave it out.[6] Prystash recognized that there is a crucial distinction between the concepts of waiver, which is more accurately characterized as forfeiture, and estoppel (invited error).[7] A party forfeits a complaint when the party fails to invoke an optional evidentiary or procedural rule.[8] Estoppel, on

---

1. 137 S.W.3d 51, 53 (Tex.Crim.App.2004).

2. *Id.* at 52.

3. *Id.* at 53.

4. *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1985).

5. *Bluitt,* 137 S.W.3d at 53.

6. 3 S.W.3d 522, 529–30 (Tex.Crim.App.1999).

7. *Id.* at 531.

8. *Marin v. State,* 851 S.W.2d 275, 278 (Tex. Crim.App.1993).

the other hand, prevents a party from complaining about an action that the party induced; "it is part of the definition of what can constitute error." [9]

Recently, we relied on *Prystash* in *Druery v. State* when addressing an analogous situation to the one before us today. During the charge conference at Druery's capital murder trial, Druery's attorney told the trial judge that he did not want a lesser-included offense instruction on first degree murder.[10] On direct appeal to this Court, we held that Druery was estopped from complaining that the trial judge should have included the instruction sua sponte.[11]

In my view, this case has nothing to do with error preservation or forfeiture; this case should be disposed of on estoppel grounds. The State requested a parties instruction and an instruction on a nondescript lesser-included offense. The trial judge overruled the request and asked Tolbert's attorney if he had any objections to the proposed charge. By stating that he had no objection on the heels of the State's request, Tolbert's attorney approved of the charge sans a lesser-included offense instruction on murder. As a result, we should not be entertaining Tolbert's claim that the trial judge erred in failing to sua sponte include a charge on murder.

However, because we did not grant review of the court of appeals's rejection of the State's estoppel argument, I join the Court's determination that the court of appeals erred in failing to consider whether there was error before proceeding to assess harm under *Almanza*. As the Court holds, the trial judge had no duty to sua sponte instruct the jury on the lesser-included offense of murder because Tolbert made no such request.[12]

JOHNSON, J., filed a dissenting opinion in which HOLCOMB, J., joined.

The state indicted appellant for capital murder. At the close of the guilt phase, the state requested that instructions on "a lesser included and parties"[1] be included in the jury charge. The trial court denied the state's request. Appellant neither joined the state's request nor objected to its denial. When queried as to whether the jury charge was acceptable to her, appellant said, "No objections." On appeal, she asserted that the trial judge should have, *sua sponte*, included an instruction on the lesser-included offense of murder. The court of appeals found that, because murder was "law applicable to the case," that instruction should have been given. It further found that the error resulted in egregious harm, reversed the judgment of the trial court and remanded "for further proceedings consistent with this opinion."[2]

In its petition to this Court, the state presented a single ground for review.

Criminal jury charges contain "law applicable to the case," and often "defensive issues." To obtain review on appeal, complaints involving "law applicable to the case" need not be preserved at trial but "defensive issues" must be preserved. Did the Fifth Court of Appeals wrongly hold that

9. *Prystash*, 3 S.W.3d at 529–30.

10. 225 S.W.3d 491, 505 (Tex.Crim.App.2007).

11. *Id.* at 506.

12. Majority op., at 781.

1. 6 R.R. 64.

2. *Tolbert v. State*, No. 05–07–00920–CR, 2008 WL 2747189, 2008 Tex. App. LEXIS 5245 (Tex.App.-Dallas, delivered July 16, 2008) (not designated for publication).

where a defendant states "no objection" to the proposed charge and then complains on appeal about the omission of a lesser-included offense instruction, the *Almanza* standard applies?

### *Almanza* [3]

The state's second reason for granting review of its petition states that the court of appeals incorrectly interpreted this Court's unanimous decision in *Bluitt v. State*, 137 S.W.3d 51 (Tex.Crim.App.2004), "which addressed the preservation of complaints for the law applicable to the case, to the preservation of complaints for defensive instructions." Nowhere in *Bluitt* do I find such a discussion. In that case, the state raised three grounds: (1) the court of appeals erroneously required prior convictions to be proved beyond a reasonable doubt; (2) the court of appeals misapplied the *Almanza* standard; and (3) the court of appeals erroneously ruled that appellant could appeal jury-charge error, even after he affirmatively stated to the trial court that he had no objection to the jury charge.

As to the first ground, we held that the language of the statute is clear; only unadjudicated offenses and bad acts have an articulated burden of proof. Final convictions have already been proved beyond a reasonable doubt, and proof of the fact of conviction is sufficient for a final conviction to be submitted to the jury. The trial court did not err in failing to give the requested instruction. Because no error occurred, no harm analysis was needed,

and we therefore did not reach the state's second ground.

As to the third ground, the ground of interest here, we noted that *Almanza* applies to all jury-charge error and that it establishes only two standards for harm analysis—egregious harm for no objection or some harm for a timely objection. We held that, because "no objection" is not a "timely objection," a response of "no objection" must be equivalent to a failure to object and therefore subject to the "egregious harm" analysis of *Almanza*. Under *Bluitt*, appellant is entitled to appeal purported jury-charge error, with any harm considered under the "egregious" standard. The answer to the state's petition for discretionary review as submitted— "Did the Fifth Court of Appeals wrongly hold that … the *Almanza* standard applies?"—is that the court of appeals did not err, and this Court should therefore affirm the judgment of the court of appeals.

### Preservation

The two statements of law that begin the state's ground for review [4] indicate that within the state's articulated *Almanza* complaint is the assumption that any request for an instruction on a lesser-included offense is a defensive issue, which leads to the conclusion that appellant failed to preserve error. This is the issue that the majority addresses, although preservation of error is a different issue than what standard to apply to jury-charge error.

---

**3.** Although the language of the state's ground for review complains of error in applying *Almanza*, its brief's argument is headed "(PRESERVATION OF DEFENSIVE JURY INSTRUCTION ISSUES)." State's Petition for Discretionary Review at 5. The argument thus does not match the plain language of the ground for review.

**4.** "Criminal jury charges contain 'law applicable to the case,' and often 'defensive issues.' To obtain review on appeal, complaints involving 'law applicable to the case' need not be preserved at trial but 'defensive issues' must be preserved."

Some jury instructions that may be requested, such as self-defense and necessity, are certainly, and exclusively, defensive issues. The Penal Code clearly labels those issues and others as "defenses."[5] If an instruction on lesser-included offenses were truly "defensive," however, the state would be barred from requesting such an instruction. But the state can, and does, request the inclusion in the jury charge of instructions on applicable lesser-included offenses.

Our case law also supports the position that lesser-included offenses are not "defensive issues." In *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex.Crim.App.2007), the sole issue before this Court was whether the trial court should have, *sua sponte*, included an instruction on reasonable doubt, truly an issue for the defense. *Delgado* does not say that the submission to the jury of lesser-included offenses is a "defensive" issue; it states only that the trial judge does not have a *sua sponte* duty to include instructions on "all potential defensive issues, lesser-included issues, or evidentiary issues." By its very words, *Delgado* removes lesser-included offenses from the category of defensive issues. *Delgado* also notes that whether to request an instruction is often a matter of trial strategy and tactics, an observation that applies to both defendant and state.

The issue in *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998), was the lack of a jury instruction on mistake of fact,[6] a statutory defense. The defendant had not requested the missing instruction. This Court framed the issue as a question of whether testimony that the defendant thought that he had permission to drive the stolen car "imposes a duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues." *Id.* at 62. The Court's answer was no.

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim.App.2007), was a capital appeal that dealt with a complaint that the trial court had not given an instruction on the lesser-included charge of murder. The opinion did not use the term "defensive issue" and decided the case on estoppel; the appellant had specifically requested that the instruction not be given. Only the concurring opinion raised the idea that an instruction on a lesser-included offense is "a kind of defensive issue." *Id.* at 513 (Keller, P.J., concurring.).

The issue in *Bufkin v. State*, 207 S.W.3d 779 (Tex.Crim.App.2006), a domestic-assault case, was whether instructions on self-defense and consent, both of which were requested by the defendant, should have been submitted to the jury. Self-defense[7] and consent[8] are statutory defensive issues and so are unhelpful in discussing lesser-included offenses.[9]

In *Campbell v. State*, 614 S.W.2d 443 (Tex.Crim.App.1981), the defendant had requested an instruction on a lesser-included offense, but the trial judge refused to include it. The requested instruction was a defensive issue because it had been raised by the defense. *Campbell*, like *Delgado*, clearly recognized that lesser-included-offense instructions are not exclusively a defensive issue: "This Court has held that when evidence from any source raises a defensive issue or raises an issue that a

5.  TEX. PENAL CODE, Chapter Eight.

6.  TEX. PENAL CODE § 8.02.

7.  TEX. PENAL CODE § 9.31.

8.  TEX PENAL CODE § 22.06.

9.  Footnote 10 of *Bufkin*, cited by the majority, refers to two cases: *Ferrel v. State*, 55 S.W.3d 586 (Tex.Crim.App.2001) (instruction on self-defense); and *Campbell v. State, infra* (defendant requested instruction).

lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury." *Id.* at 445. Our case law is clear: requests for jury instructions on lesser-included offenses are not *per se* "defensive" issues.

Professors Dix and Dawson's treatise on Criminal Practice and Procedure refers to requests for instructions on lesser-included offenses as part of the "the implied strategic decisions of the parties."[10] "The parties" in a criminal case are the state and the defendant. The professors also note that

> [b]oth sides potentially may benefit from a lesser included offense instruction. The defense interest is in limiting punishment exposure by providing a lesser alternative to the charged offense while the prosecution can obtain a greater likelihood of some type of conviction by giving the jury the option of convicting for an offense with less difficult proof requirements, particularly if the prosecution fears that the evidence is weak on the point that distinguishes the greater offense from the lesser.[11]

Their treatise affirms that an instruction on a lesser-included offense is not exclusively a defensive issue because it is not exclusively within the domain of the defense.

## Defensive Instruction or Law Applicable to the Case?

An instruction on a lesser-included offense may be a defense issue or a prosecution issue, but it may also be law applicable to the case, depending not on who requested the instruction or even whether a party requested an instruction, but on the evidence presented at trial.

> By the expressions, "the law applicable to the case," and "the law of the case," as employed in the Code, evidently is meant the law applicable to the case as made by the proofs—the law applicable to the pleadings and the evidence; and this has been the uniform construction given to them by the Supreme Court and by this court. *Davis v. The State*, decided at the present term of this court, *post.* The judge is said to have performed that duty when he shall have instructed the jury as to the law applicable to every legitimate deduction which the jury may draw from the facts in evidence.

*Lister v. State*, Court of Appeals of Texas, 3 Tex.App. 17, 1877 WL 8462, 1877 Tex. Crim.App. LEXIS 198 (1877). "However, defensive issues (even if statutorily-defined) do not constitute the 'law applicable to the case' unless the defendant makes them so by presenting evidence to support their submission in the charge and by requesting their inclusion in the charge." *Rodgers v. State*, 180 S.W.3d 716, 721 (Tex. App.-Waco 2005). Our task on a preservation claim, then, is to determine what instructions would have been in the hypothetically correct jury charge.[12] While the jury charge may be affected by the choices the parties make as to requests for instructions, some instructions must be given because the issue raised is "law applicable to the case."

> If evidence from any source raises the issue of a lesser included offense, the charge must be given. *Moore v. State*, 574 S.W.2d 122 (Tx.Cr.App.1978).... As noted in *Thompson v. State*, 521 S.W.2d

---

**10.** 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 36.50 at 250 (Supp.2009).

**11.** *Id.* at 249.

**12.** *Malik v. State*, 953 S.W.2d 234 (Tex.Crim. App.1997).

621 (Tx.Cr.App.1974), "it is ... well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted." (Citations omitted.)

*Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim.App.1985).

The indictment in this case alleged capital murder as murder in the course of robbery. It is reasonable to deduce that the state believed that the evidence might raise lesser-included offenses because, during voir dire, the state explained to the venire the lesser-included offense of murder, setting out the difference between it and capital murder and also the range of punishment. 2 R.R. 41–42. It also explained robbery, its range of punishment, and the process of deliberating first the offense charged, then any lesser-included offenses raised by the evidence. 2 R.R. 42–43. The state also requested instructions on "a lesser included and parties." 6 R.R. 64. Without inquiring what lesser offense was wanted, the trial judge denied the request.

As the state explained in voir dire, unless the killing was in the course of the robbery, the offense was murder, not capital murder.[13] Monica Sheffield, the only state's witness who asserted direct knowledge of any aspect of appellant's guilt, testified to a confession by appellant to murder, but she had no direct knowledge of appellant taking any of the complainant's possessions at the time of the murder. She could testify only that appellant came to her home carrying a jewel box[14] and that, after the murder, she and a friend drove appellant to the complainant's home, where appellant removed four long guns from the complainant's pickup. As we stated in *Bell*, "it is ... well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted." Sheffield's testimony may have been weak and contradicted, but it raised the issue of the lesser-included offense of murder. The state was entitled to an instruction on that lesser offense, and the trial court erred in denying the state's request. Given the court's response, a request from appellant for instructions on lesser-included offenses could reasonably be seen as futile. Given the evidence, the trial court should have included an instruction on a lesser-included offense as law applicable to the case.

Sheffield denied any part in the offense, but other state's witnesses implicated her in the attempted sale of the stolen long guns and, by inference, in the murder. Even if weak and contradicted, the evidence raised an issue of appellant as a party to the murder, and given that evidence, the trial court should have included an instruction on parties as law applicable to the case.[15]

---

13. That discussion may have been recalled by the jurors; during deliberations, they sent out a note asking about lesser-included offenses.

14. Testimony about the jewel box did not reveal its appearance, its provenance, or its contents.

15. The state argues in its brief that an instruction on the lesser-included offense of murder is an issue for the defense, but its actions at trial belie that assertion: "The only thing, Your Honor, we were asking for is a lesser included and parties." 6 R.R. 64. The state's request was immediately denied by the trial court, so the record does not reveal what lesser-included-offense instruction (or instructions) it wanted. In spite of that lack of specificity, the state faults appellant for failing to join in its request. State's brief at 11 and footnote 4.

## Conclusion

The court of appeals correctly analyzed the evidence presented and found that an instruction on the lesser-included offense of murder was not a defensive issue and should have been given as law applicable to the case. It followed our ruling in *Bluitt*, held that appellant could complain of that omission on appeal and, using the proper *Almanza* standard of egregious harm, found such harm. Its judgment should be affirmed. I respectfully dissent.

HOLCOMB, J., filed a dissenting opinion, in which JOHNSON, J., joined.

I join Judge Johnson's dissent and wish to add the following points.

### 1. The majority opinion conflicts with our recent decision.

I believe that the main problem with the majority's opinion is its view of the lesser-included-offense instructions as a defensive issue. Although the majority repeatedly cites Judge Cochran's concurring opinion in our recent decision in *Grey v. State*, 298 S.W.3d 644 (Tex.Crim.App.2009),[1] it fails to realize that its view of the lesser-included-offense instructions as a defensive issue is almost the opposite of the position taken by the majority in that same case. In fact, it is fair to say that we virtually moved heavens and earth in *Grey* to convince the

readers of the State's right to obtain the lesser-included-offense instructions from the trial court. So I am befuddled as to how we can now turn around and say that those same instructions are a defensive issue.

In *Grey*, appellant Steven Grey was charged with aggravated assault by causing bodily injury with a deadly weapon, to wit, Grey's hand used to strangle the victim. The jury charge, prepared by the prosecutor's office, contained instructions on both the indicted offense and the lesser-included offense of simple assault by causing bodily injury. The defense counsel objected to the lesser-included-offense instruction, but the objection was overruled. The jury found Grey guilty of the lesser-included offense of simple assault. On appeal, Grey claimed that the submission of the lesser-included offense was error. The court of appeals agreed and reversed the conviction. *Grey v. State*, 269 S.W.3d 785 (Tex.App.-Austin 2008). We granted the State's petition for discretionary review, and overruled an old precedent,[2] *Grey*, 298 S.W.3d at 645, in order to make it easier for the State to obtain the lesser-included-offense instructions from the trial court.[3]

Initially, we justified our decision to overrule *Arevalo* by explaining that it was

---

1. As I discuss in Section 4, *infra*, the majority's reliance even on that concurrence is misplaced because the reasoning in that opinion is not applicable to the present case.

2. *Arevalo v. State*, 943 S.W.2d 887 (Tex.Crim. App.1997).

3. As we noted in *Grey*, the *Royster–Rousseau* (*Royster v. State*, 622 S.W.2d 442 (Tex.Crim. App.1981) (plurality op.); *Rousseau v. State*, 855 S.W.2d 666 (Tex.Crim.App.1993)) line of cases had established a two-pronged test for determining when a trial judge was required to submit to the jury a lesser-included offense

requested by the defendant. 298 S.W.3d at 645. Later, in *Arevalo*, we held that the second prong of that test—which required that some evidence must exist in the record that would permit the jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense—was equally applicable to the submission of the lesser-included offenses requested by the State. *Id.* Thus, by overruling *Arevalo* and holding that the State is not bound by the second prong of the *Royster–Rousseau* test, *id.*, in *Grey* we removed the burden *Arevalo* had placed on the State in obtaining the lesser-included-offense instructions from the trial court.

the right thing to do for both the State and the defendant. As we stated:

> One obvious flaw in the rule laid down by *Arevalo* and its progeny, one that produces inconsistent and unjust results in every single case in which the rule is applied, is the remedy. When a lesser-included offense is submitted in violation of *Arevalo,* and the defendant is convicted of that offense, the remedy this Court has imposed is a remand for a new trial on the very same lesser-included offense that the defendant has just claimed should never have been submitted. Such a result is "illogical," but we fashioned this remedy because alternative remedies seemed unavailable or worse. Because a conviction on the lesser offense operates as an acquittal of the greater offense, retrial on the greater offense is not possible. But an outright acquittal of the criminal charge would be absurd where the evidence was in fact legally sufficient to support a conviction for the lesser-included offense.

*Id.* at 646–47 (citations omitted). But our concern moved quickly to the logic of making it easier for the State to obtain a lesser-included-offense instruction from the trial court. As we explained:

> The Court in *Arevalo* ... held that [the] rationale [for the second prong of the *Royster–Rousseau* test] "is as applicable to the State's request for a lesser-included offense as it is to a defendant's request." Why? Because a lesser-included-offense instruction "must not constitute an invitation to the jury to reach an irrational verdict."

> But the Court [in *Arevalo*] did not ask or answer the next obvious question: How does a lesser-included-offense instruction invite a jury to reach an irrational verdict? If the lesser offense is viewed in isolation, a jury's verdict would be rational so long as the lesser

offense is included in the charging instrument and supported by legally sufficient evidence. The [second] prong of the *Royster–Rousseau* test requires, however, that we view the rationality of the lesser offense, not in isolation, but in comparison to the offense described in the charging instrument. But why should we make that comparison? The answer must be that the State is entitled to pursue the charged offense and, therefore, is entitled to receive a response from the jury on whether the defendant is guilty of the charged offense. Is the defendant similarly entitled to a response from the jury on the charged offense? The answer to that question is clearly no. It is the State, not the defendant, that chooses what offense is to be charged. In fact, the State can abandon an element of the charged offense without prior notice and proceed to prosecute a lesser-included offense. If the State can abandon the charged offense in favor of a lesser-included offense, there is no logical reason why the State could not abandon its unqualified pursuit of the charged offense in favor of a qualified pursuit that includes the prosecution of a lesser-included offense in the alternative.

*Id.* at 649–50 (citations omitted). Thus, we emphasized that it was the State, more than the defendant, who was entitled to the benefit of having the lesser-included-offense instructions, in light of its burden to prove that the defendant, even if he was not guilty of the charged offense, was at least guilty of the lesser offense.

We went on to emphasize that the society's interests would also be best served by making it easier for the State to obtain those instructions from the trial court. As we explained,

> [A]t the time of trial, the State might ... legitimately perceive[ ] the possibili-

ty ... that an appellate court would decide that the evidence was legally insufficient to prove the [element necessary for the jury to convict on the greater offense].

. . . .

The cautious approach for the prosecutor to take would be—or at least should be—to request the lesser-included offense. Allowing submission of lesser offenses when requested by the prosecutor would serve at least two important interests. First, society has an interest in convicting and punishing people who are guilty of crimes. When, in the prosecutor's judgment, submission of the lesser-included offense will enhance the prospects of securing an appropriate criminal conviction for a defendant who is in fact guilty, society's interests are best served by allowing the submission. Second, the prosecutor has "the primary duty ... not to convict, but to see that justice is done." Even if the prosecutor believes in a given case that he will secure a conviction on the charged offense if the only alternative is acquittal, he might also believe that the jury should be given the option to decide whether a conviction on the lesser offense is more appropriate.

*Id.* at 650–51 (citations omitted).

We emphasized our view favoring the State's right to obtain the lesser-included-offense instructions even in our conclusion, stating that we had to overrule *Arevalo* because the common-law rule established in that case placed "undue burdens on the prosecutor." *Id.* at 651.

In short, in *Grey* we recognized the State's right to the lesser-included-offense instructions as being superior to the defendant's right to have such instructions insofar as we exempted the State from the second prong of the *Royster–Rousseau* test, which remains applicable to the sub-

mission of the lesser-included-offense instructions requested by the defendant. As such, I do not see how the majority in the present case can now call those instructions a defensive issue. On the contrary, I believe that appellant in the present case is entitled to relief for the same reasons we granted relief to the State in *Grey.*

### 2. *Applicability of* Grey *to the present case.*

The majority admits that it was the State who had requested the lesser-included-offense instructions in the present case. This fact in itself conflicts with the majority's characterization of those instructions as a "defensive" issue because the State was obviously not trying to help the defense in this case.

In fact, the record shows that the prosecutor in the present case did much more than just ask for the lesser-included-offense instructions. Although the trial in this case predates our recent decision in *Grey,* even a cursory examination of the record shows that the prosecutor did exactly what we suggested the prosecutor should do when there is a possibility that the available evidence might not be sufficient to convince the jury to convict the defendant on the charged offense. The record in the present case clearly shows such a possibility. In fact, there was no direct evidence to prove that appellant had actually killed the victim during the course of robbing him. There were no eyewitnesses to either crime, nor any video recording to show what actually happened. There were not even any witness accounts of appellant's telling them, for example, that she had killed the victim because he had caught her stealing the items in question, or that she had wanted to get her hands on those items but he stood in her way, etc. The witnesses at trial stated only that she had told them that he had

said hurtful things, that the more she thought about what he had said the more it hurt, and that it was in this state of hurting that she killed him, and that even as she was stabbing him she kept telling him, "I love you, I love you, I love you." This was the evidence that the State presented, and the evidence that it emphasized in both its closing arguments. Thus, there is no way to determine on this evidence whether the murder was committed before the robbery (in which case it was not capital murder), or during the course of the robbery (in which case it was capital murder).

On the state of such evidence, it is not surprising that the prosecutor adopted the "cautious approach" that we later encouraged in *Grey*. 298 S.W.3d at 651. The record clearly shows—from the indictment right up to the closing arguments—that the prosecutor was trying to ensure that the jury would find appellant guilty at least of the lesser-included offense of murder.

- *The Indictment:* In the second paragraph of the indictment, the State alleges for enhancement that appellant had been formerly convicted of the felony offense of robbery. Enhancement would not be relevant if the State were anticipating a conviction for capital murder, for which the automatic punishment in this case would be a life sentence, because the State did not ask for the death penalty.[4] It would be relevant only if the State were uncertain about the strength of its case and was therefore preparing for a possible conviction for the lesser-included offense of murder, in which case a former conviction would enhance the minimum punishment of only five years for a first-degree felony

to 15 years for a repeat and habitual felony offender.[5]

- *The Lesser–Included–Offense Instructions:* The majority in the present case notes that "the parties had discussed several lesser-included offense scenarios such as murder and robbery during voir dire." Maj. op. at 778. Contrary to the majority's suggestion, the record shows that the State spent a great deal of time discussing the lesser-included offense involved in the present case: murder. Indeed, the State spent far more time discussing this issue with the jurors than the defense did.

- *The Evidence at Trial:* The majority states that the State presented evidence that could support either a finding that appellant had committed the murder during the course of robbing the victim (capital murder), or that she had decided to rob the victim only after killing him (murder). *Id.* at 777. But, while there was strong evidence to show that appellant committed the murder and the theft, the evidence in the record purporting to show the critical link necessary to elevate the offense from murder to capital murder— that the murder was in fact committed during the course of a robbery—was, at best, weak and only inferential.

- *Closing Arguments:* The majority fails to mention that the State focused on the lesser-included offense in both its final arguments to the jury, even after the trial judge had already overruled its request for instructions on that offense and had not included those instructions in the jury charge. The State did so by emphasizing appellant's own statements to the wit-

---

**4.** *See* Tex. Pen Code §§ 19.03(b) & 12.31(a).

**5.** *See* Tex. Pen.Code §§ 19.02(c), 12.32(a), & 12.42(c)(1).

nesses who later testified at trial, which proved appellant guilty only of murder, not capital murder. In fact, the State did not discuss any evidence, or even draw any inferences from the evidence presented, to try to show that the murder was committed during the course of a robbery. Thus, the State's arguments, in the absence of the lesser-included-offense instructions in the jury charge, relayed a remarkably distorted message to the jury: that if they were to find appellant guilty of the lesser-included offense of murder, they should convict her for the greater offense of capital murder, even though the State had done virtually nothing at trial to try to prove the critical element necessary to elevate the offense from murder to capital murder, *i.e.*, that the murder had been committed during the course of a robbery.

Thus, the record clearly shows the prosecutor's intense focus on the lesser-included offense. There was nothing wrong with that inasmuch as she was doing exactly what we, in *Grey*, recently suggested that a prosecutor should do when the evidence supporting a conviction for the charged offense is weak: take the "cautious approach" and try to prove the lesser offense, including asking the trial court for the lesser-included-offense instructions, in order to ensure that a guilty defendant would not go completely free simply because the evidence was insufficient to convict her on the charged offense. *Grey*, 298 S.W.3d at 651. But the prosecutor created a problem when she continued that strategy, discussing the lesser offense even after the trial judge denied her request for the lesser-included-offense instruction and did not include that instruction in the jury charge. Her persistence in the strategy confused the jurors, resulting in the note that they sent to the trial court, asking about the lesser-included offense that the prosecutor, not the defense, had practically ingrained in their brain from the very beginning of the trial.[6] The trial court might have been able to, but failed to, provide the jury with the guidance that they asked for to help them convict a defendant that they, judging by their note, seriously considered might have been guilty of murder, but not capital murder.

The trial court's refusal to give the lesser-included-offense instructions requested by the State unduly limited the jury's choices: they could either convict appellant on capital murder, or acquit her. The jury could not acquit appellant because there was enough evidence in the case (in the form of appellant's own statements to other witnesses) to show that she had committed the murder and the theft. So, they went for the only choice they had left for conviction: capital murder. But, in *Grey*, we talked at length about "unjust results" and how "an outright acquittal of the criminal charge would be absurd where the evidence was in fact legally sufficient to support a conviction for the lesser-included offense." *Id.* at 646–47. Is an outright conviction any more just or less absurd where the evidence is in fact legally insufficient to support a conviction for the greater offense?

### 3. Law applicable to the case.

This is an important point that the majority neglects to address. I believe that

---

**6.** The jury note stated: "Should we consider lesser included charges if we [text scratched out] believe the robbery was an afterthought[?] Does it make a difference if the robbery was an afterthought [text scratched out] to a crime of passion[?]" It is important to note here that the trial court, interpreting this jury note as a request for a lesser-included-offense instruction, could have charged the jury on the lesser offense at this point. *See* TEX.CODE.CRIM. PROC art. 36.16 ("After the argument begins no further charge shall be given to the jury unless required by ... the request of the jury.").

the question of what law is or is not "applicable to the case" should not be determined in hindsight, based on who won and who lost at trial. The question of whether or not the trial court erred in refusing the State's request for lesser-included-offense instructions should be determined, not on the basis of who is complaining and when, but why? I believe that the trial court erred in the present case because it limited the jury to a choice of two extreme decisions (to convict for capital murder, or acquit), when the evidence at trial warranted something in the middle: a conviction for a lesser-included offense. By taking away this middle choice, the trial court turned the verdict into a gamble, which guaranteed a windfall to one side to the complete detriment of the other, but no way to be sure who was going to be the big winner and who would be the big loser. The jury in the present case opted to give the benefit to the State, and it was the appellant who suffered the detriment when she was convicted for capital murder in the absence of any real evidence to show that the murder was committed during the course of a robbery. But the jury might just as easily have come out the opposite way. They could have acquitted appellant, and it would have been the State to suffer the detriment of seeing a defendant, who was at least guilty of the lesser-included offense, go scot-free. I believe that verdicts should be reached, not by a gamble, but by clear-cut rules of law that are laid out in the jury charge well before anyone can be sure which party will win. I also believe that our courts are courts of "law and justice," and that such law and justice is not just for the benefit of the State.

### 4. The majority misinterprets appellant's claim.

The majority has misunderstood appellant's argument. It virtually adopts the State's argument (that appellant was "going for broke" and is now complaining only because her strategy did not pay off and she was convicted of capital murder, see, e.g., Maj. op. at 779–80) throughout its opinion. The majority then proceeds to rebuff appellant on the ground that we should "discourage parties from sandbagging or lying behind the log." See, e.g., id. at 780 n. 6 (citation omitted). But, in so doing, the majority completely misses appellant's real argument before us. As appellant has clearly stated in her own formulation of the "Issue Presented,"

> Under the facts of this case, does the State's failure of proof of the elements alleged in the indictment to prove capital murder result in the lesser-included offense of murder becoming a defensive issue; or did the error occur when the court refused the jury's request for an instruction on the lesser-included murder offense[?]

See Appellant's Brief at ii, 2 & 9. As appellant later stated even more clearly:

> Respondent argues that the failure of the State's evidence to initially convince the jury beyond a reasonable doubt that a capital murder was committed, as is evidenced by the jury's request for an instruction on a lesser offense, does not create a defensive issue but is instead the law of the case, and the court therefore erred in not originally charging the jury on murder, sua sponte, without regard to a request from the defendant; and that the court erred again in not providing this law to the jury members at their request.

Id. at 10.

One had to draw an inference from the evidence presented to think that the murder might have been committed during the

course of a robbery, making it capital murder. The indictment, as well as the State's strategy from voir dire to the closing arguments, clearly indicate the State's own uncertainty whether it would be able to convince the jury to convict appellant for capital murder. That was why it was the State, not the defendant, who asked the trial court for the lesser-included-offense instruction, in the first place. The State was obviously not trying to help the defendant by asking for a defensive instruction. But, even after the trial court refused to give those instructions, the State summarized the evidence proving the lesser offense, without even trying to show any link between the murder and the robbery that could have helped persuade the jury that the murder was committed during the course of a robbery. As appellant has correctly argued, the fact that the jury was not convinced that appellant had committed capital murder is shown by the note it sent to the trial court. This note indicated the jury's "belie[f]" that "the robbery was an afterthought," which reduced appellant's offense to what even the jury realized was only a "lesser included charge[ ]," *see supra* note 6, which in turn indicates that the State had failed to prove a critical element of the charged offense: that the murder was committed during the course of the robbery. And that is appellant's real contention, which the majority fails to address in its opinion.

5. *Hall required the trial court to give the lesser-included-offense instructions.*

The majority declines to review the present case in light of our decision in *Hall v. State*, 225 S.W.3d 524 (Tex.Crim.App. 2007). *See* maj. op. at 777–78 n. 1. I submit, however, that such a review is indispensable especially to the facts of this

case. The majority states that *Hall* sets out a "two-part test for when a defendant is entitled to her requested lesser-included-offense instruction." *Id.* But there is nothing in *Hall* to support the majority's suggestion that *Hall* is applicable only to cases in which the lesser-included-offense instructions were requested by the defendant. As we stated at the very beginning of that opinion, "We granted review to resolve ambiguities and conflicts in our decisions about the method of determining whether the allegation of a greater offense includes a lesser offense." 225 S.W.3d at 525. We continued in this vein throughout that opinion, discussing that method of when and how to determine whether a lesser-included offense was included in the charged offense, without regard to whether such instructions had been requested by the State or the defendant or, for that matter, no one at all.

As we stated, "[t]he evidence adduced at trial should remain an important part of the court's decision whether to charge the jury on lesser-included offenses." *Id.* at 536. We repeated this central idea in the very next line, as we stated that "[t]he second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury." *Id.* It is true that we then went on to state that "[a] defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* But that is not the same as requiring the defendant to request the lesser-included-offense instructions before she is entitled to receive them.[7]

7. It would have been a different matter if appellant in the present case had objected to

The present case is a perfect illustration of the difference between the situation in which a defendant is entitled to a lesser-included-offense instruction and one in which she is required to request such an instruction before she can become entitled to it. *Hall* requires only "some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* Specifically, "anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id.* In the present case, it is questionable whether a scintilla of evidence existed to prove a critical element of the charged offense: that the murder was committed during the course of a robbery. The prosecutor's case—from the enhancement paragraph in the indictment, to the discussion of the lesser-included offense in voir dire, to the presentation of evidence from witnesses relating appellant's own account that she had committed the murder only in a heat of passion, to the closing arguments that failed to even mention or otherwise show that the murder was committed during the course of the robbery— was singularly focused on proving the lesser offense. The fact that the jury sent out a note, specifically asking the court for guidance on the lesser offense, even though the jury charge itself did not even mention that offense, showed their inclination to find appellant guilty of that offense rather than the one charged in the indictment. Thus, there was more than "some evidence in the record" to persuade the

jury to "rationally ... find" that appellant was guilty only of the lesser-included offense. *Id.* It is, therefore, clear that the trial court erred in not giving the lesser-included-offense instruction requested by the State.

The fact that appellant failed to object to the charge is relevant only to the extent that *Almanza* [8] applies, requiring a showing of egregious harm before appellant can be granted relief. But it is clear that appellant in this case did suffer such egregious harm in light of the fact that she was convicted of capital murder, even though the jury itself seemed inclined to believe that she was guilty only of the lesser-included offense of murder.

### 6. The trial court's error

Finally, I believe that we are avoiding an issue which stands out like an elephant in a bathtub; and that is whether appellant's counsel was ineffective for not specifically asking and arguing for a lesser-included-offense instruction. I realize that no point of error was advanced on this issue. However, if we look closely at what occurred, we can see that an argument for ineffective assistance of counsel makes some sense. The State had requested a lesser-included-offense instruction and, based on the evidence presented at trial, appellant's counsel should have joined the request and/or objected to the charge without such an instruction. It would not have hurt counsel's strategy of asserting

the submission of the lesser-included-offense instructions requested by the State, and the trial court had overruled the State's request because of that objection. In that case, I might agree with the majority that appellant cannot have it both ways: object to the instructions at trial and, if she loses the case, to then appeal on the grounds that the trial court should have granted the State's request, after all. But that is not the case before us. Appellant stated that she had no objection to

the jury charge, which did not have the lesser-included-offense instructions; but her not objecting and, in effect, going along with the court's ruling is not the same as actively objecting to the inclusion of the lesser-included-offense instructions in the charge.

8. *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g).

appellant's complete innocence to have sided with the State on this issue. I believe, therefore, that counsel was ineffective in failing to join the State's request for the lesser-included-offense instruction.

On the other hand, Judge Johnson may be right in suggesting that the failure of appellant's counsel to request a lesser-included-offense instruction might have been reasonable if such a request would have been futile in light of the trial court's response to the State's request on this same issue. *See* Dis. op. at 789 (Johnson, J., dissenting). But, regardless of whether appellant's counsel was ineffective or justified in failing to ask for and/or join the State's request for the lesser-included-offense instruction, my point is that the trial court should still have included that instruction in the charge because the need for such an instruction should have been obvious from what it had heard from the parties during voir dire and seen as evidence presented at trial. As I suggested earlier, *see supra* note 6, even if the trial court had originally failed to recognize the need to include the lesser-included-offense instruction in the jury charge, it should (and, under Article 36.16 of the Code of Criminal Procedure, could) have charged the jury on the lesser-included offense when it received the note from the jury asking specifically about that offense.

*     *     *     *     *     *

The question of the lesser-included-offense instructions in this case is not a "defensive" issue, but rather one of "law applicable to the case." The real issue before this Court is that the trial court erred in not giving the lesser-included-offense instructions requested by the State because the State failed to prove beyond a reasonable doubt a critical element of capital murder: that the murder was committed during the course of the robbery. The record strongly suggests that the State

itself was uncertain as to a conviction on the charged offense and did its best to convince the jury to convict appellant on the lesser offense. The State's singular focus on the lesser offense in itself was sufficient to make the question of the lesser-included-offense instructions "law applicable to the case." The fact that the jury happened to err on the side of convicting rather than acquitting appellant should not detract us from these basic facts: the State failed to prove a critical element of the charged offense, the trial court failed to provide the jury with the proper "law applicable to the case" covering all three verdicts (capital murder, murder, acquittal) possible in the present case, and appellant was convicted of an offense much greater than the one the jury itself seemed inclined to believe she had committed.

For the foregoing reasons, I respectfully dissent.