02-09-395-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00395-CR

 

 


 
 
 Mark Oberlander
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

FROM THE 396th
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Mark Oberlander of deadly conduct but acquitted him of
manslaughter and criminally negligent homicide.[2]  He brings four points,
challenging the legal and factual sufficiency of the evidence to support his
conviction and contending that the trial court reversibly erred by not
including jury instructions on concurrent causation and voluntary act.  Because
we hold that the evidence is sufficient and that the trial court committed no
reversible error, we affirm the trial court’s judgment.

I.  Summary of Facts

Appellant
and David Kwilos lived in a house in Arlington, Texas, with its owner, Matt
Rabun.  At trial, Kwilos’s friend David Campbell testified that he regularly
spent time at the house and that on September 28, 2008, he arrived at the house
around 12:30 or 1:00 a.m.  He got a beer and went to Kwilos’s room and woke him
up.  The two men talked while Campbell fixed himself something to eat. 
Campbell and Kwilos became aware that someone else was present but did not see
anyone; eventually Campbell noticed Appellant “peering around the corner,
almost like he didn’t know [that Campbell] was there.”  Campbell greeted
Appellant, who then returned to his bedroom.  Kwilos became agitated and went
into Appellant’s bedroom.  Campbell could tell that they were arguing, and a
few minutes later, Kwilos came out of Appellant’s room, upset.  From what Kwilos
said to Campbell, Campbell concluded that Appellant had put a gun to Kwilos’s
head.

Kwilos
went back into Appellant’s room and came out again about ten seconds later,
carrying a pool stick by its smaller end.  He picked up Campbell’s keys from
the sofa and told Campbell to follow him.  Kwilos, with Campbell following,
went to Appellant’s room.  From the doorway, Campbell could see Appellant on
his bed.  He did not see a gun.  Campbell said he was leaving and headed toward
the back door.  Before he reached the back door, Campbell heard a shot.

Campbell
testified that a few weeks before the shooting, Appellant had a confrontation
with two other men at the house during a poker game.  Several days later,
Appellant brought two guns to the house, one that “looked like an AK-47” and an
assault shotgun with a pistol grip.  Campbell stated that Appellant said he had
five bullets, “each one with our names on it.”  Campbell also testified that a
few days before the shooting, Kwilos and Appellant had had a fist fight over a
knife that the three men had been using to install carpet in the house.

The
State introduced a copy of a 911 call from the night of the shooting on which
Appellant and Kwilos can be heard arguing.  Kwilos can be heard saying, “I
should have fucked you up so bad for fucking what you did yesterday,” to which
Appellant replied, “I’m about to kill you anyway.”  A shotgun blast can be
heard on the tape after that.  Appellant stayed on the phone until the police
arrived, and on the tape Appellant repeatedly stated that the gun went off when
Kwilos grabbed the gun and pulled it toward him.  Appellant made this same
assertion when interviewed by the police after his arrest.

Jamie
Becker of the Tarrant County Medical Examiner’s Office testified that when
Kwilos was shot, in her opinion, the end of the barrel was not in contact with
the skin but was closer than six feet away.  She could not say whether Kwilos’s
arm had been extended when he was shot; she could only say that it was not down
by his side.  Marc Krouse, also from the medical examiner’s office, first
characterized the wound as a “close-range wound from a shotgun” but later
characterized it as a “distant range wound” based on the lack of soot or powder
and the fact that the shot had begun to disperse.  He later stated that the
wound “impl[ied] that the muzzle-to-skin distance [was] not really that far [away].” 
Krouse also testified that at the time of his death, Kwilos had benzodiazepine,
Valium, cannabinoids, hydrocodone, methamphetamine, and ecstasy in his system.

II. 
Sufficiency of the Evidence

Appellant
was charged by indictment with deadly conduct[3] by knowingly discharging
a firearm at or in the direction of Kwilos.  Appellant argues in his first two
points that the State was required to prove beyond a reasonable doubt that he
knowingly discharged the weapon and that the State failed to sustain its burden
of proof.

After
Appellant submitted his brief, the Texas Court of Criminal Appeals held that
there is no meaningful distinction between the legal sufficiency standard and
the factual sufficiency standard.[4]  Thus, the Jackson
standard, which is explained below, is the “only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.”[5]

In our
due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the prosecution to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.[6]  The jury is the sole
judge of the credibility of the evidence and the weight to be given to each
piece of evidence.[7]

The
sufficiency of the evidence in a criminal case is not determined by a
no-evidence standard.[8]  Instead, we must look at
all the evidence to determine whether a rational jury could have found that the
State proved every element of the offense of felony deadly conduct.

Lorri
Tiner, Kwilos’s sister, testified that he had called her a day or so before his
death and had told her that Appellant had threatened to kill him.  Kwilos asked
Tiner to help him leave the home, and she testified that he had recently
qualified to receive governmental housing assistance.  He was to move into a
new home but was killed before he could do so.  Her testimony was confirmed by
the 911 recording the jury heard.

Appellant
admitted that he was holding the firearm when he told Kwilos that he was about
to kill him and immediately before it discharged, killing Kwilos.  Appellant
said that the weapon discharged when Kwilos grabbed the barrel.  The jury, as
the trier of fact, was free to determine the credibility of the witnesses and
to evaluate the meaning of the recording they heard.  The medical testimony
supports both theories, that of Appellant’s firing the weapon and that of
Kwilos’s grabbing the barrel.  The jury obviously believed that Appellant
carried out his intention to kill Kwilos rather than Appellant’s version of the
events.

Applying
the appropriate standard of review, we hold that the State sustained its burden
of proving each and every element of the offense of deadly conduct, as alleged
in the indictment, beyond a reasonable doubt.  We overrule Appellant’s first
two points.

III. 
Jury Charge

Appellant argues in his third
and fourth points that the trial court reversibly erred by failing to instruct
the jury on concurrent cause and voluntary act.[9]  Appellate review
of error in a jury charge involves a two-step process.[10] 
Initially, we must determine whether error occurred.  If it did, we must then
evaluate whether sufficient harm resulted from the error to require reversal.[11]

The
trial court has a duty to instruct the jury on the law applicable to the case
regardless of any objection to the charge by Appellant.[12] 
Appellant is correct that there is evidence of a concurrent cause, based on his
contention that Kwilos grabbed the barrel and pulled the weapon toward him
while Appellant’s finger was on the trigger.  Appellant is also correct that
the same evidence raises the issue of voluntary act.  Consequently, concurrent
causation and voluntariness were part of the law applicable to the case if
instructions on the issues had been requested,[13] and the trial court could
properly have instructed the jury on concurrent causation and voluntariness.

Concurrent
causation and voluntariness, however, are defensive issues.[14] 
“An unrequested defensive issue is not the law applicable to the case.”[15] 
A trial court is not required to sua sponte instruct the jury on purely
defensive issues because to require instruction on defensive issues is to
intrude on counsel’s trial strategy.[16]  Because Appellant did
not object to the omissions from the charge or request the omitted instructions,
the trial court did not err by choosing not to instruct the jury on those
issues.[17]  We overrule Appellant’s
third and fourth points.

IV. 
Conclusion

Having
overruled Appellant’s four points, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 12, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. §§ 19.04, 19.05, 22.05(b), (e) (Vernon 2003).





[3]See Tex. Penal Code
Ann. § 22.05(b).





[4]Brooks v. State, 323
S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis v. State, 922
S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).





[5]Id.





[6]Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).





[7]Brooks, 323 S.W.3d at
899.





[8]Butler v. State, 769
S.W.2d 234, 239 (Tex. Crim. App. 1989), overruled
on other grounds by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim. App.
2000).





[9]See Tex. Penal Code
Ann. §§ 6.01, 6.04 (Vernon 2003).





[10]Abdnor v. State,
871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287
S.W.3d 23, 25B26 (Tex.
Crim. App. 2009).





[11]Abdnor, 871 S.W.2d
at 731B32.





[12]Taylor v. State,
332 S.W.3d 483, 486 (Tex. Crim. App. 2011).





[13]See Tolbert v. State,
306 S.W.3d 776, 779 (Tex. Crim. App. 2010) (citing Posey v. State, 966
S.W.2d 57, 61 (Tex. Crim. App. 1998)).





[14]See Tex. Penal Code Ann. §§
6.01, 6.04; Rogers v. State, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003);
Bell v. State, 169 S.W.3d 384, 394–95 (Tex. App.—Fort Worth 2005, pet.
ref’d).





[15]Taylor, 332 S.W.3d
at 487.





[16]Tolbert, 306
S.W.3d at 780 (citing Delgado v. State, 235 S.W.3d 244, 249–50 (Tex.
Crim. App. 2007)).





[17]See id.