Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00642-CR

Lawrence Adam **PENA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR10043B
Honorable Mary D. Román, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  June 22, 2011

AFFIRMED

A jury found appellant, Lawrence Adam Pena, guilty of murder and assessed punishment

at life in prison.  On appeal, appellant challenges the legal sufficiency of the evidence and asserts

he was egregiously harmed by error in the jury charge.  We affirm.

## SUFFICIENCY OF THE EVIDENCE

Appellant was found guilty of murdering Evaristo Mena on the night of June 3, 2008.  At

trial, appellant claimed he acted in defense of his brother Kenneth Pena.  On appeal, appellant

asserts the evidence is legally insufficient to support the jury's implicit rejection of his "defense of a third person" justification defense.

## A.     Standard of Review

When determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt, we use the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  The *Brooks* Court characterized this standard as asking whether, considering all of the evidence in the light most favorable to the verdict, a jury was rationally justified in finding guilt beyond a reasonable doubt.  *Id.* at 899, 902 (citing *Jackson*, 443 U.S. at 319).  "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony."  *Id.* at 899.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.  TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2003).  A person is justified in using deadly force against another to protect a third person if (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified in using force or deadly force to protect himself against the use or attempted use of unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.  *Id.* §§ 9.31(a), 9.32(a) (West Supp. 2010).  The defendant has the burden of producing some evidence to support his justification defense.  *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).  Once the defendant produces some evidence, the State bears the burden of persuasion to

disprove the raised defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). This burden does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* "Defense of a third person" is an issue of fact to be determined by the jury, and a verdict of guilty is an implicit finding by the jury rejecting the defendant's defensive theory. *See id.* at 913-14.

## B.    The Evidence

On the night of June 3, 2008, Evaristo Mena and several friends arrived at Ric-Ron's Taco House to eat. After getting their table, Mena went outside to the parking lot, presumably to use his cell phone. A short time later, Mena came back to the door of the restaurant, bleeding from his mouth and shoulder. One of Mena's friends, Kathy Flores, said she saw two "flower girls" selling flowers in the parking lot. After Mena appeared at the door bleeding, Flores said she saw a man get into the passenger side of a red F-150 pickup truck. Another of Mena's friends, Leroy Benavides, said he saw two people running toward a red pickup truck that was parked in the lot of a bar next to Ric-Ron's. The red truck left the parking lot and headed south on Roosevelt Street.

Eventually, the police and EMS arrived, and EMS transported Mena to a hospital where he later died. At trial, the medical examiner testified Mena had three specific injuries: (1) a small bruise on the underside of his lip, (2) a very superficial cut on his left upper arm, and (3) a stab wound to the chest that went directly into his heart.

One of the responding police officers said he spoke to a woman named Yvonne Pena on the night of the stabbing. Pena, who is not related to appellant, knew appellant from a prior sexual relationship. Pena testified she was across Roosevelt Street from Ric-Ron's when she saw a "scuffle" across the street. She saw a man, later identified as Mena, "face off" with two

other men who were trying "to corner him." She said Mena was trying to fight off the men who were hitting him, then he threw money at them and began to run towards a house at the end of the lot. As the men chased Mena, he fell, and she heard a bottle break. She saw appellant fall on top of Mena, pull something from his [appellant's] pocket and "lunged" it into Mena. When Mena got back up and started toward Ric-Ron's, she heard appellant say something to the effect of "don't worry about it, dude, I already got him." Appellant and another man, whom she later learned to be Kenneth, walked back to the truck. Although Pena did not notice any injuries on either appellant or Kenneth, she called out to appellant asking him if he was "alright." According to Pena, appellant responded that he was fine, and then he and Kenneth got into the pickup truck and drove south on Roosevelt. Pena identified the man she spoke to as "Adam."

Another witness, Americo Vega, said he saw someone walking toward Ric-Ron's who was bleeding. Vega saw two other men, one of whom said to the other "I stabbed him." Vega saw both men get into a red pickup truck. Vega was unable to identify either of the two men from a photo lineup.

Following up on a Crime Stoppers tip, the police later identified "Adam" as Lawrence Adam Pena, the appellant, and the other man as appellant's brother, Kenneth Pena. Yvonne Pena later identified "Adam" from a photo lineup as the man she saw and spoke to the night of the murder. A search of Kenneth's truck yielded no significant evidence. The police were unable to locate the two "flower girls."

At trial, appellant testified on his own behalf and the following is a recitation of his testimony. Appellant and Kenneth were entering the parking lot near the bar when they saw Mena and the "flower girls." Appellant said "we" asked Mena and the girls to "move over." Kenneth then parked the truck next to another car and turned off the motor. At this point, Mena

walked up to Kenneth's red F-150 Ford truck and "got in Kenneth's face." Mena, who appellant did not know, looked angry and tried to open the driver's door of the truck, but Kenneth held the door closed. When Mena again tried to open the door, Kenneth got out of the truck and stood within two feet of Mena; both men were now arguing. Appellant got out of the truck and walked around the back of the truck to see what was happening. Appellant got between his brother and Mena. All three men were between Kenneth's truck and the car. Kenneth and Mena then started to fight, but appellant did not know who started the fight. Appellant said that Mena "connected my brother in the chin, and my brother buckled" and "got like dazed." Mena then turned and tried to hit appellant. Appellant was able to get Mena to back up by "throwing his [appellant's] arms" and then appellant tried to kick Mena "to get him away." Kenneth approached and Mena started to yell at him. Mena then got Kenneth "in a head lock," and Kenneth dropped to his hands and knees. Mena told Kenneth, "I'm going to fuck you up," "I'm going to kill you 'flaco' [skinny]." Because he thought Mena was going to hurt his brother, appellant pulled his knife from his back pocket.

Appellant admitted to stabbing Mena only once. Appellant said he could have stabbed him more than once, but he did not and instead he "just look[ed at Mena], like get back, get back . . . ." Appellant said he had no choice but to stab Mena because Mena said he was going to kill Kenneth, he was already beating up Kenneth, and Kenneth—who is "real skinny"—could not defend himself. When appellant told Mena "that's it," Mena turned and ran away, but then stumbled and fell on his hands. Appellant began to walk toward Mena as he ran away because Mena yelled "I'm going to get y'all, or I'm going to 'f' you up, fools." Appellant did nothing more to Mena, and instead, told his brother he wanted to leave. Appellant insisted he and

Kenneth walked, and did not run, to the truck. Appellant said that although his brother was beaten and his brother had a heart murmur, they did not go to the hospital.

On appeal, appellant asserts he had only the briefest of moments to decide what to do, under extremely stressful emergency conditions in a darkened parking lot in the middle of the night. Appellant's rendition of the events is not entirely inconsistent with the evidence presented by the State. However, this does not render the State's evidence insufficient because the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. *Saxton*, 804 S.W.2d at 914. After viewing the evidence in the light most favorable to the verdict, we conclude any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt, and thereby implicitly reject appellant's "defense of a third person".

## JURY CHARGE

In his second issue, appellant asserts he was egregiously harmed because the trial court failed to sua sponte instruct the jury that his use of deadly force was presumed reasonable under the circumstances.

Appellant's defensive theory was that he fatally stabbed Mena to protect his brother. The jury charge instructed the jury that

> a person is justified in using deadly force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force and deadly force to protect himself against the unlawful or deadly force of another which he reasonably believes to be threatening the third person he seeks to protect, provided he also reasonably believes that his intervention is immediately necessary to protect the third person.

In addition to this instruction, appellant contends the trial court also should have sua sponte instructed the jury that an actor's belief that deadly force was immediately necessary "is presumed to be reasonable" if the actor "knew or had reason to believe that the person against

- 6 -

whom the deadly force was used" was committing or attempting to commit murder. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(C). Appellant contends the trial court's failure to include the additional instruction resulted in egregious harm under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). Under *Almanza*, we first determine whether the jury charge was erroneous. *Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010). If it was, then because appellant did not object, we next determine whether the error in the charge resulted in egregious harm. *Almanza*, 686 S.W.2d at 171. We will assume without deciding that the trial court erred, and for the reasons below, we determine appellant was not egregiously harmed.

In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Here, appellant argues the charge error vitally affected his "defense of a third person" defensive theory because such a defense required that his belief be reasonable and he was entitled to the presumption of reasonableness.

As noted above, the jury charge instructed the jury on "defense of a third person." Although the charge did not include an instruction on the presumption of reasonableness, the charge defined "reasonable belief" to mean "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." The jury was then instructed that if it believed that appellant reasonably believed Mena was using or attempting to use unlawful deadly force against Kenneth and that the use and degree of force were immediately necessary to

- 7 -

protect Kenneth against Mena's use or attempted use of deadly force, then the jury should find appellant not guilty.

During the State's closing, the prosecutor explained to the jury when someone is justified in using force against another, and in the process, used two short examples to illustrate "reasonable belief." However, most of the State's closing focused on the evidence presented at trial, in particular the testimony of Yvonne Pena. Similarly, defense counsel also focused on the testimony of both appellant and Pena. Defense counsel did not state to the jury that appellant's actions were reasonable, except to say the confrontation escalated quickly "to the point where [appellant] felt he had no other choice but to do what he did to protect his brother."

Based on our review of the record, it is apparent the jury was faced with a credibility question, and recognizing this, both the State and the defense focused their closing arguments on appellant's and Pena's testimony. On this record, we cannot conclude the jury charge error affected appellant's defensive theory. Therefore, the charge error, if any, did not result in egregious harm to appellant.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish