MEMORANDUM OPINION

 

No. 04-10-00642-CR

 

Lawrence Adam Pena,

Appellant

 

v.

 

The State of Texas,

Appellee

 

From the 175th
Judicial District Court, Bexar County, Texas

Trial Court No. 2008CR10043B

Honorable Mary D. Román,
Judge Presiding

 

Opinion by:   Sandee Bryan Marion, Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Sandee
Bryan Marion, Justice

                     Rebecca
Simmons, Justice

 

Delivered and
Filed:  June 22, 2011

 

AFFIRMED

 

           A jury found appellant, Lawrence Adam Pena, guilty of murder and assessed punishment
at life in prison.  On appeal, appellant challenges the legal sufficiency of
the evidence and asserts he was egregiously harmed by error in the jury
charge.  We affirm.

SUFFICIENCY
OF THE EVIDENCE

           Appellant
was found guilty of murdering Evaristo Mena on the night of June 3, 2008.  At
trial, appellant claimed he acted in defense of his brother Kenneth Pena.  On
appeal, appellant asserts the evidence is legally insufficient to support the
jury’s implicit rejection of his “defense of a third person” justification
defense.  

A.       Standard
of Review

           When determining
whether evidence is sufficient to support each element of a criminal offense
that the State is required to prove beyond a reasonable doubt, we use the
standard of review set forth in Jackson v. Virginia, 443 U.S. 307 (1979). 
Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  The Brooks
Court characterized this standard as asking whether, considering all of the
evidence in the light most favorable to the verdict, a jury was rationally
justified in finding guilt beyond a reasonable doubt.  Id. at 899, 902
(citing Jackson, 443 U.S. at 319).  “Viewing the evidence ‘in the light
most favorable to the verdict’ under a legal-sufficiency standard means that
the reviewing court is required to defer to the jury’s credibility and weight
determinations because the jury is the sole judge of the witnesses’
credibility and the weight to be given their testimony.”  Id. at 899.

           A
person commits the offense of murder if he intentionally or knowingly causes
the death of an individual.  Tex. Penal
Code Ann. § 19.02(b)(1) (West 2003).  A person is justified in using
deadly force against another to protect a third person if (1) under the
circumstances as the actor reasonably believes them to be, the actor would be
justified in using force or deadly force to protect himself against the use or
attempted use of unlawful deadly force he reasonably believes to be threatening
the third person he seeks to protect; and (2) the actor reasonably believes
that his intervention is immediately necessary to protect the third person.  Id.
§§ 9.31(a), 9.32(a) (West Supp. 2010).  The defendant has the burden of
producing some evidence to support his justification defense.  See Zuliani
v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).  Once the defendant
produces some evidence, the State bears the burden of persuasion to disprove the
raised defense.  Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).
 This burden does not require the State to produce evidence; it requires only
that the State prove its case beyond a reasonable doubt.  Id.  “Defense
of a third person” is an issue of fact to be determined by the jury, and a
verdict of guilty is an implicit finding by the jury rejecting the defendant’s
defensive theory.  See id. at 913-14.

B.       The
Evidence

           On
the night of June 3, 2008, Evaristo Mena and several friends arrived at
Ric-Ron’s Taco House to eat.  After getting their table, Mena went outside to
the parking lot, presumably to use his cell phone.  A short time later, Mena
came back to the door of the restaurant, bleeding from his mouth and shoulder. 
One of Mena’s friends, Kathy Flores, said she saw two “flower girls” selling
flowers in the parking lot.  After Mena appeared at the door bleeding, Flores
said she saw a man get into the passenger side of a red F-150 pickup truck. 
Another of Mena’s friends, Leroy Benavides, said he saw two people running
toward a red pickup truck that was parked in the lot of a bar next to
Ric-Ron’s.  The red truck left the parking lot and headed south on Roosevelt
Street.

           Eventually,
the police and EMS arrived, and EMS transported Mena to a hospital where he
later died.  At trial, the medical examiner testified Mena had three specific
injuries: (1) a small bruise on the underside of his lip, (2) a very
superficial cut on his left upper arm, and (3) a stab wound to the chest that
went directly into his heart.  

           One
of the responding police officers said he spoke to a woman named Yvonne Pena on
the night of the stabbing.  Pena, who is not related to appellant, knew
appellant from a prior sexual relationship.  Pena testified she was across Roosevelt
Street from Ric-Ron’s when she saw a “scuffle” across the street.  She saw a
man, later identified as Mena, “face off” with two other men who were trying
“to corner him.”  She said Mena was trying to fight off the men who were
hitting him, then he threw money at them and began to run towards a house at
the end of the lot.  As the men chased Mena, he fell, and she heard a bottle
break.  She saw appellant fall on top of Mena, pull something from his
[appellant’s] pocket and “lunged” it into Mena.  When Mena got back up and
started toward Ric-Ron’s, she heard appellant say something to the effect of
“don’t worry about it, dude, I already got him.”  Appellant and another man,
whom she later learned to be Kenneth, walked back to the truck.  Although Pena did
not notice any injuries on either appellant or Kenneth, she called out to
appellant asking him if he was “alright.”  According to Pena, appellant
responded that he was fine, and then he and Kenneth got into the pickup truck
and drove south on Roosevelt.  Pena identified the man she spoke to as “Adam.” 


           Another
witness, Americo Vega, said he saw someone walking toward Ric-Ron’s who was
bleeding.  Vega saw two other men, one of whom said to the other “I stabbed
him.”  Vega saw both men get into a red pickup truck.  Vega was unable to
identify either of the two men from a photo lineup.

           Following
up on a Crime Stoppers tip, the police later identified “Adam” as Lawrence Adam
Pena, the appellant, and the other man as appellant’s brother, Kenneth Pena. 
Yvonne Pena later identified “Adam” from a photo lineup as the man she saw and
spoke to the night of the murder.  A search of Kenneth’s truck yielded no
significant evidence.  The police were unable to locate the two “flower girls.”

           At
trial, appellant testified on his own behalf and the following is a recitation
of his testimony.  Appellant and Kenneth were entering the parking lot near the
bar when they saw Mena and the “flower girls.”  Appellant said “we” asked Mena
and the girls to “move over.”  Kenneth then parked the truck next to another
car and turned off the motor.  At this point, Mena walked up to Kenneth’s red
F-150 Ford truck and “got in Kenneth’s face.”  Mena, who appellant did not
know, looked angry and tried to open the driver’s door of the truck, but
Kenneth held the door closed.  When Mena again tried to open the door, Kenneth
got out of the truck and stood within two feet of Mena; both men were now
arguing.  Appellant got out of the truck and walked around the back of the
truck to see what was happening.  Appellant got between his brother and Mena. 
All three men were between Kenneth’s truck and the car.  Kenneth and Mena then
started to fight, but appellant did not know who started the fight.  Appellant
said that Mena “connected my brother in the chin, and my brother buckled” and
“got like dazed.”  Mena then turned and tried to hit appellant.  Appellant was
able to get Mena to back up by “throwing his [appellant’s] arms” and then
appellant tried to kick Mena “to get him away.”  Kenneth approached and Mena
started to yell at him.  Mena then got Kenneth “in a head lock,” and Kenneth
dropped to his hands and knees.  Mena told Kenneth, “I’m going to fuck you up,”
“I’m going to kill you ‘flaco’ [skinny].”  Because he thought Mena was going to
hurt his brother, appellant pulled his knife from his back pocket.  

           Appellant
admitted to stabbing Mena only once.  Appellant said he could have stabbed him
more than once, but he did not and instead he “just look[ed at Mena], like get
back, get back . . . .”  Appellant said he had no choice but to stab Mena
because Mena said he was going to kill Kenneth, he was already beating up
Kenneth, and Kenneth—who is “real skinny”—could not defend himself.  When
appellant told Mena “that’s it,” Mena turned and ran away, but then stumbled
and fell on his hands.  Appellant began to walk toward Mena as he ran away
because Mena yelled “I’m going to get y’all, or I’m going to ‘f’ you up,
fools.”  Appellant did nothing more to Mena, and instead, told his brother he
wanted to leave.  Appellant insisted he and Kenneth walked, and did not run, to
the truck.  Appellant said that although his brother was beaten and his brother
had a heart murmur, they did not go to the hospital.     

           On
appeal, appellant asserts he had only the briefest of moments to decide what to
do, under extremely stressful emergency conditions in a darkened parking lot in
the middle of the night.  Appellant’s rendition of the events is not entirely
inconsistent with the evidence presented by the State.  However, this does not
render the State’s evidence insufficient because the credibility determination
of such evidence is solely within the jury’s province and the jury is free to
accept or reject the defensive evidence.  Saxton, 804 S.W.2d at 914.  After
viewing the evidence in the light most favorable to the verdict, we conclude any
rational trier of fact could have found the essential elements of murder beyond
a reasonable doubt, and thereby implicitly reject appellant’s “defense of a
third person”.

JURY
CHARGE

           In
his second issue, appellant asserts he was egregiously harmed because the trial
court failed to sua sponte instruct the jury that his use of deadly force was
presumed reasonable under the circumstances.

           Appellant’s
defensive theory was that he fatally stabbed Mena to protect his brother.  The
jury charge instructed the jury that 

a person is justified in using deadly
force against another to protect a third person if, under the circumstances as
he reasonably believes them to be, such person would be justified in using
force and deadly force to protect himself against the unlawful or deadly force
of another which he reasonably believes to be threatening the third person he
seeks to protect, provided he also reasonably believes that his intervention is
immediately necessary to protect the third person.

 

           In
addition to this instruction, appellant contends the trial court also should
have sua sponte instructed the jury that an actor’s belief that deadly force
was immediately necessary “is presumed to be reasonable” if the actor “knew or
had reason to believe that the person against whom the deadly force was used”
was committing or attempting to commit murder.  See Tex. Penal Code Ann. § 9.32(b)(1)(C). 
Appellant contends the trial court’s failure to include the additional
instruction resulted in egregious harm under Almanza v. State, 686
S.W.2d 157 (Tex. Crim. App. 1984).  Under Almanza, we first determine
whether the jury charge was erroneous. Tolbert v. State, 306 S.W.3d 776,
779 (Tex. Crim. App. 2010).  If it was, then because appellant did not object,
we next determine whether the error in the charge resulted in egregious harm.  Almanza,
686 S.W.2d at 171.  We will assume without deciding that the trial court erred,
and for the reasons below, we determine appellant was not egregiously harmed.

           In
examining the record for egregious harm, we consider the entire jury charge,
the state of the evidence, the final arguments of the parties, and any other
relevant information revealed by the record of the trial as a whole.  Olivas
v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).  “Jury charge error
is egregiously harmful if it affects the very basis of the case, deprives the
defendant of a valuable right, or vitally affects a defensive theory.”  Stuhler
v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007).  Here, appellant
argues the charge error vitally affected his “defense of a third person”
defensive theory because such a defense required that his belief be reasonable
and he was entitled to the presumption of reasonableness.

           As
noted above, the jury charge instructed the jury on “defense of a third
person.”  Although the charge did not include an instruction on the presumption
of reasonableness, the charge defined “reasonable belief” to mean “a belief
that would be held by an ordinary and prudent person in the same circumstances
as the defendant.”  The jury was then instructed that if it believed that
appellant reasonably believed Mena was using or attempting to use unlawful
deadly force against Kenneth and that the use and degree of force were
immediately necessary to protect Kenneth against Mena’s use or attempted use of
deadly force, then the jury should find appellant not guilty. 

           During
the State’s closing, the prosecutor explained to the jury when someone is
justified in using force against another, and in the process, used two short
examples to illustrate “reasonable belief.”  However, most of the State’s
closing focused on the evidence presented at trial, in particular the testimony
of Yvonne Pena.  Similarly, defense counsel also focused on the testimony of
both appellant and Pena.  Defense counsel did not state to the jury that
appellant’s actions were reasonable, except to say the confrontation escalated
quickly “to the point where [appellant] felt he had no other choice but to do
what he did to protect his brother.”

           Based
on our review of the record, it is apparent the jury was faced with a
credibility question, and recognizing this, both the State and the defense
focused their closing arguments on appellant’s and Pena’s testimony.  On this
record, we cannot conclude the jury charge error affected appellant’s defensive
theory.  Therefore, the charge error, if any, did not result in egregious harm
to appellant.

CONCLUSION

           We
overrule appellant’s issues on appeal and affirm the trial court’s judgment.

 

 

Sandee Bryan Marion, Justice

 

Do not publish