**Opinion filed August 8, 2013**



## In The

# Eleventh Court of Appeals

_____

## No. 11-11-00100-CR

_____

### JOEL LARA CRUZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 167th District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-DC-10-904097**

### M E M O R A N D U M   O P I N I O N

This court's former opinion and judgment dated April 25, 2013, are withdrawn, and this court's opinion and judgment dated August 8, 2013, are substituted therefor. Appellant's motion for rehearing is this same day denied.[1]

---

[1]Upon receipt of Appellant's motion for rehearing, the court reexamined the exhibits contained in the reporter's record. Upon examination, the court requested the court reporter to file a supplemental reporter's record containing some recordings and large plats that were not included in the reporter's record originally filed in this cause. The court has reviewed these supplemental items in consideration of Appellant's motion for rehearing, including State's Exhibit Nos. 31, 32, and 36 that are plats depicting the apartment complex, the location of the emergency vehicles, and the locations of the paramedics, police officers, and Appellant during the incident.

Joel Lara Cruz was indicted for four counts of aggravated assault with a deadly weapon against a public servant. The jury convicted him of the offenses in Counts One and Four and acquitted him of the offenses in Counts Two and Three. The jury assessed his punishment at confinement for a term of fifteen years on each count in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his convictions in six points of error. We affirm.

*Background Facts*

Brian Mason and Eric Richard Lancaster, paramedics employed by the City of Austin, responded to a call at the Forest Hill Apartments in Austin on the evening of December 4, 2009. They were responding to an injury call from police officers that had previously arrived at the apartment complex. As Mason pulled equipment from the ambulance, he "felt air and like a whiz go by [his] head." He subsequently heard an air rifle being fired, and he heard a "pellet" hit the concrete close to his feet. He testified that the first shot came within inches of him and that it was loud enough that he could hear it over the running diesel engine of his ambulance. Mason and Lancaster ran to the apartment where the police officers had responded to alert the officers that someone was shooting at the paramedics with an air rifle.

Officer Valentin Ramirez De Los Santos of the Austin Police Department had previously responded to a domestic violence call at the apartment complex. He called for the paramedics to treat a female that had been cut by a window. Upon receiving the shooting report from the paramedics, Officer De Los Santos and Officer Justin Berry attempted to locate the shooter. As they approached the area in the apartment complex where the shots had been fired, Officer De Los Santos and Officer Berry heard another shot. Officer De Los Santos feared that Officer Berry had been hit in the face by the shot. Officer Berry testified that the shot came within inches of his face and that he heard it make an impact behind

2

him.  Officer Berry and Officer De Los Santos observed a man standing on a balcony holding a rifle, and they identified him as the shooter.  Officer De Los Santos and Officer Berry also identified Appellant at trial as the shooter.

Officer De Los Santos was prepared to shoot Appellant but did not do so when Appellant took a step back on the balcony.  With the assistance of backup officers, Officer De Los Santos subsequently entered the apartment where Appellant was located.  Upon entering the apartment, he observed Appellant on the balcony.  Officer De Los Santos subsequently found an air rifle hidden behind some tools on the balcony.  Officer Berry also found a container of BBs on the balcony.

Mason, Lancaster, Officer De Los Santos, and Officer Berry all testified that they felt threatened by the shots that Appellant fired at them.  As paramedics, Mason and Lancaster testified that they were trained to treat air rifle injuries as serious injuries because air rifles can be deadly.  Officer De Los Santos offered his opinion that an air rifle is capable of causing death or serious bodily injury.  The State also presented the testimony of Gregg Karim, a firearm and tool mark examiner for the Austin Police Department, regarding his examination of the air rifle recovered from Appellant.  He described the air rifle as a ".177-caliber" "manual multi-pump variable powered pneumatic rifle."  His testing of the air rifle revealed that it was capable of firing a pellet between 203 and 481 feet per second and that it was capable of firing a BB between 270 and 523 feet per second.  He opined that the air rifle was capable of causing serious bodily injury based upon research indicating that a BB can penetrate the eye if fired at 246 feet per second and that it could penetrate the skin if fired at 365 feet per second.

The indictment alleged in Count One that Appellant intentionally or knowingly threatened Officer Berry with imminent bodily injury and that he used or exhibited a deadly weapon during the commission of the assault.  Count One

further alleged that Officer Berry was a public servant discharging an official duty and that Appellant knew that Officer Berry was a public servant at the time. Counts Two, Three, and Four alleged the same offense with respect to Mason (Count Two), Lancaster (Count Three), and Officer De Los Santos (Count Four). The jury convicted Appellant of the offense of aggravated assault with a deadly weapon against a public servant with respect to Officer Berry (Count One) and Officer De Los Santos (Count Four), but acquitted him of the offense with respect to the paramedics, Mason (Count Two) and Lancaster (Count Three).

*Analysis*

In his first four points, Appellant challenges the sufficiency of the evidence supporting his convictions. We review a sufficiency of the evidence point, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

4

In his first and second points, Appellant challenges the sufficiency of the evidence supporting the jury's determination that the air rifle constituted a deadly weapon as alleged in Counts One and Four. A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2) (West 2011). The offense is elevated to an aggravated assault if the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). The Penal Code defines a deadly weapon as (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17) (West Supp. 2012).

Appellant contends that the evidence supporting the deadly weapon finding is insufficient because there was no evidence of the distance between the air rifle and the officers when Appellant fired the shots, no evidence of whether he used pellets or BBs, and no evidence of the number of times Appellant pumped the gun when firing at the officers or the velocity of the projectiles expelled from the air rifle. We disagree with Appellant's analysis. The relevant inquiry is the gun's capability rather than its actual performance. "[I]n proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use." *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002). The court held in *Adame* that evidence of whether or not a BB gun used in a convenience store robbery was loaded was not significant to a deadly weapon analysis. *Id.* This principle applies in the instant case because the distance, ammunition, and number of pumps used by Appellant are not relevant to the question of what the air rifle was capable of doing.

Karim testified that the air rifle was capable of causing serious bodily injury in its manner of use or intended use.[2] He supported his opinion with his findings regarding the air rifle's capabilities. Based on Karim's expert testimony, a factfinder could conclude beyond a reasonable doubt that, if used to shoot a person in the eye or other sensitive part of the body, the air rifle was capable of causing serious bodily injury, including the possibility of "permanent disfigurement" or "protracted loss or impairment of the function of any bodily member or organ." *See* PENAL § 1.07(a)(46). Appellant's first and second points are overruled.

Appellant's third and fourth points challenge the sufficiency of the evidence supporting the jury's determination that he knew that Officer Berry and Officer De Los Santos were public servants. Aggravated assault is punishable as a first-degree felony if the offense is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(b)(2)(B). The statute creates a presumption that an accused knew that "the person assaulted was a public servant . . . if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant." *Id.* § 22.02(c). The trial court instructed the jury on this presumption in the court's charge along with the general instruction to be given for permissive presumptions under Section 2.05(a).[3] *Id.* § 2.05(a).

---

[2]As noted above, Officer De Los Santos, Officer Berry, Mason, and Lancaster also testified that the air rifle was capable of causing serious bodily injury.

[3]The instruction provided as follows:

> The defendant is presumed to have known the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating his employment as a public servant.

> The jury is instructed relative to this presumption, as follows:

>> (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

Appellant bases his evidentiary challenge on evidence that the apartment complex area was not well lit and that Officer De Los Santos and Officer Berry utilized tactical maneuvers to limit their body exposure to the shooter. However, Mason testified that he and Lancaster arrived at the scene in a large blue and yellow ambulance and that they continued to keep the bright flashing lights on the ambulance activated after they arrived and parked at the complex. Another police officer at the scene, Officer Shawn Austin McWhorter, testified that the shooter shot at three target areas and that each shot required him to move to a different location to take each shot. He also testified that Appellant had a clear view of the location where the ambulance was parked from the breezeway of his apartment building. Officer McWhorter further testified that the lights from the ambulance "radiated in" the courtyard area of the apartment complex. Additionally, Officer De Los Santos and Officer Berry testified that they were wearing their uniforms at the time of the incident and that their uniforms had white patches on the shoulders and arms identifying them as police officers.

Viewing the evidence in the light most favorable to the jury's verdict, the jury could have inferred that Appellant knew Officer De Los Santos and

FOOTNOTE NO. 3 CONTINUED:

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

Officer Berry were public servants based upon their uniforms identifying them as police officers and the fact that he was able to see them sufficiently to be able to fire at them. Additionally, the presence of flashing emergency lights from the ambulance radiating throughout the apartment complex is another factor supporting the inference that Appellant knew the officers were public servants. It was within the jury's province to resolve or reconcile any conflicts regarding the lighting of the apartment complex and Appellant's ability to perceive that Officer De Los Santos and Officer Berry were police officers at the time that he shot at them. Furthermore, the officers' testimony that they were in full uniform constituted sufficient evidence of the predicate evidentiary fact to support the statutory presumption that Appellant knew that they were public servants. The jury instruction advised the jury that it "may find" the presumed fact if it found the existence of the predicate fact. The permissive nature of the instruction afforded the jury the opportunity to reject the statutory presumption if it determined that Appellant had not observed that Officer De Los Santos and Officer Berry were police officers. Appellant's third and fourth points are overruled.

Appellant asserts in his fifth point that the trial court erred in admitting into evidence the warning inscribed on the air rifle. He contends that the warning constituted hearsay. The warning provided as follows: "Warning: Misuse or careless use may cause serious injury or death." The State asserts that Appellant waived the error by failing to object to it when the air rifle was admitted into evidence. We agree.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion. *Id.* A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either

8

before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Waiver occurs if similar evidence is admitted either before or after the objection. *Marshall v. State*, 210 S.W.3d 618, 631 (Tex. Crim. App. 2006).

The trial court initially considered the warning inscribed on the air rifle during Officer De Los Santos's testimony. Appellant objected to Officer De Los Santos reading the warning aloud to the jury. After a discussion outside the presence of the jury, the trial court sustained the objection. During this discussion, counsel for Appellant advised the trial court that he did not object to the admission of the air rifle, only the reading of the warning aloud to the jury. The trial court revisited the issue during Karim's testimony when the State asked Karim to read the warning aloud. The trial court overruled Appellant's objection on the basis that the air rifle was already in evidence.

We conclude that the trial court did not abuse its discretion in permitting Karim, an expert, to read the warning inscription aloud to the jury after the air rifle had already been admitted into evidence. As noted above, Appellant did not object to the admission of the air rifle or seek to have the warning redacted from it upon admission. Thus, Appellant did not preserve this point for appellate review. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010). Moreover, the warning was cumulative of the previous evidence from Karim, the police officers, and the paramedics that the air rifle was capable of causing serious bodily injury. Accordingly, an error associated with the reading of the warning aloud to the jury was harmless. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (When the erroneous admission of evidence is cumulative of other properly admitted evidence proving the same fact, the erroneous admission is harmless.). Appellant's fifth point is overruled.

In his sixth point, Appellant contends that the trial court committed egregious error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), by failing to sua sponte instruct the jury on the lesser included offense of simple assault. He bases this contention on his perceived deficiencies in the evidence regarding the use or exhibition of a deadly weapon and his awareness that the officers were public servants. However, Appellant did not request an instruction on the lesser included offense of simple assault. A trial court has a sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). However, the trial court has no duty to sua sponte instruct the jury on lesser included offenses because they are defensive issues that frequently depend upon trial strategy and tactics. *Delgado*, 235 S.W.3d at 249; *accord Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010). An instruction on a lesser included offense is simply not applicable to the case absent a request by the defense for its inclusion in the jury charge. *Tolbert*, 306 S.W.3d at 781. Appellant's sixth point is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

TERRY McCALL

JUSTICE

August 8, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.