# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00105-CR

**David Jollone King, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-10-300142, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant David Jollone King guilty of capital murder, and the trial court assessed a sentence of life in prison without parole. On appeal, appellant contends that the trial court erred by not holding a hearing on his motion for new trial, by overruling his objection to the prosecutor's statement during argument that he did not call a particular person to testify, and by not instructing the jury on a lesser-included offense of felony murder. We will affirm the judgment.

## BACKGROUND

On January 6, 2010, Jonathan Stanchel drove his passenger, Justin Mendez, to an address Mendez requested. They parked and waited in the car. Appellant and another man, Daniel Byrd, approached the car, but Mendez would not allow Byrd into the car because Byrd had recently robbed him. Appellant got into the backseat of the car on the driver's side, behind Stanchel. What happened next is the subject of conflicting testimony.

Stanchel testified that the man who got into the car put a gun against Stanchel's head and said, "Give it up," which Stanchel took to mean that he should surrender property. Stanchel instead reached for the car door and heard the gun fire. This shot apparently grazed Stanchel, as he had a gunshot wound on the back of his head near his right ear. He heard two more gunshots as he fled. Police responding to a report found passenger Mendez dead in the car with two gunshot wounds.

Appellant testified that he did not have a gun that night. He said that Mendez pulled a gun and threatened him. Appellant said that he grabbed the gun, struggled with Mendez, and a shot went off. Appellant testified that he pulled the gun away from Mendez and shot twice, then returned to his vehicle. Appellant said he was gripping the gun so tightly that he bled. Appellant denied planning to rob Mendez and said that the shooting happened in the moment.

Other witnesses who rode with appellant and Byrd to the meeting place testified that appellant and Byrd had a conversation that included whether appellant had a "burner," which the witnesses took to mean a gun. Joshua Dennis recalled appellant saying that he had a burner, Justin Wilson recalled appellant nodding, and Jamal Stevens remembered appellant indicating he had a gun. Dennis, Wilson, and Stevens also recalled appellant and Byrd discussing "hitting a lick," which they said can mean many things including a drug deal or a robbery. Dennis and Stevens said they did not take that discussion seriously, however, because Byrd took money to the other car and they did not see a gun beforehand. The three companions also testified that, immediately after the shooting, Byrd returned to the car saying that appellant had started shooting. Wilson testified

2

that appellant said, "I got nervous, I got nervous, so I let off a couple shots." Byrd feared that people would seek revenge against him because he had previously robbed Mendez.

Two men who were in jail with appellant testified that he spoke to them about the incident. One said that appellant told him that he and Byrd went to rob a man, the man moved, and the gun went off. Another said that appellant told him he shot a man when a drug deal and robbery went bad because the man would not give up his stuff. Stanchel testified that Mendez did not own or carry a gun and did not have a gun on him the night he was killed.

## DISCUSSION

Appellant raises three issues on appeal. He contends that the trial court erred by denying his motion for new trial without conducting a live evidentiary hearing into his complaint that his right to a fair trial was compromised by his being in a leg brace and being the only witness who had a sheriff's deputy near him when he testified. He argues that the trial court erred by overruling his objection to the prosecutor's argument that appellant failed to call a co-defendant as a witness. He also complains that the trial court erred by failing to sua sponte include in the jury charge an instruction on the lesser-included offense of felony murder.

**No abuse of discretion in denying motion for new trial without a hearing**

We review a trial court's ruling on whether to grant a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion when its decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* The purpose of a hearing on a motion for new trial is to: (1) decide

whether the case should be retried and (2) prepare a record for presenting issues on appeal in the event the motion is denied. *Id*. at 338. The right to a hearing on a motion for a new trial is not absolute. *Id*.

A hearing on a motion for new trial is mandated when the motion raises matters that are not determinable from the record and the defendant establishes the existence of reasonable grounds showing that he or she could be entitled to relief. *Id*. at 338-39. The motion for new trial must be supported by an affidavit specifically setting out a sufficient factual basis for the claims made. *Id*. at 339. Even if a matter is not determinable from the record, a hearing is not required unless the defendant "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* (quoting *Reyes v. State*, 849 S.W.2d 812, 815-16 (Tex. Crim. App. 1993)).

In his motion for new trial, appellant complained that the trial court violated his right to due process and a fair trial. *See* U.S. Const. amends. V, VI. He asserted that the leg brace gave him an obvious limp and made a sound when he moved to and from the witness stand. He also said that the sheriff's deputy sat within five feet of him when he testified and followed him to and from the witness stand. He asserted that, although the jurors were not in the courtroom when he went to the witness stand, they were not removed when he returned to the defense table. He said that he had to walk right in front of the jury, limping and clinking and followed by a deputy. He asserted that, because he was the only witness treated in this way, it singled him out as different from the other witnesses.

4

On appeal, although appellant reiterates his complaints, he acknowledges that the reporter's record shows that appellant was seated either at counsel table or on the witness stand when the jury was in the courtroom and that he moved between those locations when the jury was out of the courtroom. This issue is determinable from the record and did not require a hearing. Appellant insists, however, that the trial court should have held a hearing on the proximity of the deputy during his testimony because that issue was not clearly determinable from the record. The record does not reflect how close any deputy was to appellant during his testimony, whether the deputy was present during other witnesses' testimony, or whether the deputy's presence had any reported effect on the jury.

Conditions in the courtroom that treat the defendant differently are not inherently prejudicial because jurors are aware that the defendant is not in trial by choice or happenstance. *Holbrook v. Flynn*, 475 U.S. 560, 567, 570-71 (1986) (four state troopers seated on front row of spectator section not inherently damaging to fair trial); *see also Howard v. State*, 941 S.W.2d 102, 117-18 (Tex. Crim. App. 1996) (presence of twenty uniformed officers in audience during punishment phase not inherently prejudicial); *Sterling v. State*, 830 S.W.2d 114, 117-18 (Tex. Crim. App. 1992) (presence of seven armed guards did not deprive defendant of an impartial jury or presumption of innocence absent evidence of prejudice). Given the testimony about Byrd's fear of reprisals for the shooting, the jury might just as well have believed that the deputy was assigned to defend appellant. *See Holbrook*, 475 U.S. at 569. The supreme court in *Holbrook* held that the question is not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether "an unacceptable risk is presented of impermissible factors coming into play." *Id*.

at 570. Appellant's assertion that the deputy's presence singled him out does not show reasonable grounds that he could be entitled to relief, nor does it indicate an uncertainty regarding such grounds that should have been clarified by a hearing. We find no abuse of discretion in the trial court's denial of the hearing request.

**No error in allowing prosecutor's argument that he did not call co-defendant as a witness**

To fall within the realm of proper jury argument, the argument must encompass one of the following areas: summation of the evidence presented at trial; reasonable deduction drawn from the evidence; answer to the opposing counsel's argument—a.k.a. invited argument; and a plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362-63 (Tex. Crim. App. 1987); *Modden v. State*, 721 S.W.2d 859, 862 (Tex. Crim. App. 1986). In *Albiar*, the defendant relied on an alibi witness who testified that he and the defendant were in the company of a third person, but did not call the third person. 739 S.W.2d at 361-62. The trial court overruled the defendant's objection to the State's mention in argument that the third person was under subpoena and waiting outside the courtroom, but that the defense had not called him to testify. *Id.* The court of criminal appeals opined that it would not reverse a conviction based on argument that the defendant had invited. *Id.* at 362.

Appellant complains about this statement by the prosecutor in argument: "[Defense counsel] said bring Daniel Byrd here. He could have brought him here if he so desired." Appellant contends that this was improper argument because Byrd was effectively unavailable to testify because he was facing prosecution and would have invoked his right against self-incrimination.

6

The prosecutor's argument was plainly a response to appellant's extensive argument regarding the implications of the State's failure to call Byrd as a witness:

> And isn't it interesting that this gentleman who is over in Travis County, who is not here did not testify, in Travis County jail. [sic] Isn't it interesting the State did not bring him over. And only the State can grant him immunity to testify. Mr. Byrd, we'll give you immunity. You go up there, we can't use what you say against you. You have to testify. You can be compelled to testify. And that's the one person the State didn't bring. I can't bring him in. I can't compel him to testify. I cannot give him immunity.
>
> You cannot do your job unless you are given all the evidence. And the one most important witness is Mr. Byrd and the State did not bring him in. Have him testify what happened there. Have him testify if he does robberies. As I said, the State can grant him immunity to where anything he says cannot be used against him and they didn't do that.
>
> The State wants you to come back with a verdict and give this young man life and die when he is 70, 50, whatever age. And you're wondering, what would Mr. Byrd say? What would he say under direct? What would he say under cross? How would he answer these issues? And he was never brought. It's empty. We have no idea what Mr. Byrd could say. And they could have brought him in. They could have brought him in. They brought in everyone else they wanted. They brought in the expert. They brought in everybody who was in jail. They found them. But that's the one guy. What's that all about? That is right there. I will tell you a reasonable doubt.
>
> Right there when you look at the evidence you say, you know what, you want us to do our job, you want us to live with this decision, you want us to live with the decision of people that we know were lying. Let's be honest, we're dealing with the underworld here. We're dealing with drugs. We're dealing with people that aren't honest. And if you want us to give a young man, a 20-year-old man a life sentence, all right, but by gosh bring in all the witnesses. Bring them all in. Don't just leave them out. What is that about? That's the giant elephant missing. That's more than reasonable doubt.

This argument by defense counsel opened the door wide for the prosecutor to respond as he did. The trial court did not err by overruling appellant's objection.

7

**No error in failing to instruct the jury on felony murder**

Appellant complains for the first time on appeal about the absence of a jury instruction regarding felony murder. The trial court instructed the jury on capital murder, murder, and self-defense to murder. It declined appellant's request for an instruction on manslaughter, stating that the evidence did not support that charge. Appellant did not at trial request an instruction on felony murder, nor did he object to its absence, but contends on appeal that the trial court nevertheless should have given the instruction sua sponte.

The trial judge must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *see Delgado v. State*, 235 S.W.3d 244, 247 (Tex. Crim. App. 2007). If the lesser-included offense of felony murder is not part of the "law applicable to the case," then there is no error in the court's charge. *See Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010). Typically, a charge on a lesser-included offense should be given when (1) the lesser-included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence that would permit a rational jury to find the defendant guilty of the lesser offense but not guilty of the greater. *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005).

The court of criminal appeals has held that trial courts have no duty to sua sponte instruct the jury on lesser-included offenses and that a jury instruction on a lesser-included offense is not "applicable to the case" in the absence of a request for an instruction or an objection to its absence. *Tolbert*, 306 S.W.3d at 781. The court held that it would not force trial courts to deprive defendants of the all-or-nothing strategy of going for an outright acquittal. *Id.* Because appellant

8

did not request an instruction on felony murder or object to its absence, that lesser-included offense is not "applicable to the case," and the trial court did not err by omitting an instruction on that offense. *See id.* Because the trial court did not err, we do not engage in the *Almanza* analysis. *See id.* at 782; *see also Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

## CONCLUSION

We overrule all three points of error and affirm the conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   April 25, 2014

Do Not Publish

9