**AFFIRMED AS MODIFIED and Opinion Filed December 3, 2019**



**In the**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00865-CR

**DONALD RAY GILES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F16-24162-K**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Carlyle

Donald Ray Giles appeals his conviction and sentence for capital murder. He contends: (1) the evidence is legally insufficient to support his conviction; (2) the trial court erred by not instructing the jury on the lesser included offenses of murder and manslaughter; (3) his trial counsel was constitutionally ineffective; and (4) his mandatory sentence of life without parole is unconstitutional. We affirm and, because the issues are settled in law, issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

Layth Fadhil runs a business from a warehouse unit adjacent to one formerly occupied by Donald St. Claire. St. Claire, an elderly man with his own business, lived in the office portion of

his unit. Fadhil and St. Claire were friends, and Fadhil would often check on St. Claire to make sure he was okay.

On July 3, 2016, Fadhil returned from a trip overseas. He drove to his unit the next morning and immediately noticed "a terrible smell." He walked over toward St. Claire's unit and noticed the smell got stronger. When he peeked inside St. Claire's unit, he saw St. Claire's dead body: "[H]is cheeks [were] all swollen up. His body was like decomposed, and I [saw] puddles of blood on the floor. That's when I rushed back to my office, grabbed the phone, and called 911."

When police officers arrived, they found St. Claire's moderately decomposed body sitting in a recliner. There was a large pool of blood on the floor in front of him, and it appeared his skull had been crushed. An autopsy later confirmed St. Claire was killed by blunt-force trauma to the head, and the medical examiner determined his death was a homicide. Officers found a sledgehammer near St. Claire's body, which Fadhil confirmed St. Claire kept in his unit. The medical examiner concluded St. Claire's injuries appeared consistent with a blow from a sledgehammer, although he could not rule out other objects. The State did not present further physical evidence linking St. Claire's injuries to the sledgehammer found at the scene.

Police obtained surveillance footage covering all entrances and exits to and from St. Claire's unit. This footage showed only one person (later determined to be Giles) entering or exiting St. Claire's unit after St. Claire was last seen entering the unit alive on July 1 and before his body was discovered on July 4. In fact, Giles was seen entering and exiting the unit multiple times during that period, including a visit soon after St. Claire was last seen alive on July 1, two visits later that night, and two more visits on the morning of July 4.

When interviewed by police, Giles admitted he was the person seen on the surveillance footage entering and exiting St. Claire's unit. He also admitted both that he entered St. Claire's

unit intending to steal and that he stole several items from the unit. But he insisted he did not kill St. Claire.

Among the evidence admitted at this trial was the surveillance footage, the autopsy report, and Giles's police interview. The medical examiner also testified that St. Claire's death was a homicide. And he added that, based on St. Claire's injuries, the killer used a relatively heavy object to strike the elderly St. Claire in the head with tremendous force. A police detective further testified that, after reviewing all of the surveillance footage, Giles was the only person who either entered or exited St. Claire's unit during the time frame in which St. Claire was killed. Thus, the State argued, he is the only person who could have killed St. Claire.

Giles did not offer evidence of his own. Instead, his counsel conceded during closing arguments that Giles burglarized St. Claire's unit. He contended the State failed to prove Giles was the person who killed St. Claire, asking the jury to convict him of burglary. The jury convicted Giles of capital murder, and the trial court sentenced him to life in prison without parole.

**The evidence was legally sufficient to support Giles's conviction.**

In his first two issues, Giles challenges the legal sufficiency of the evidence, arguing the State failed to establish both his identity as the killer and his intent to kill St. Claire. When evaluating the sufficiency of the evidence supporting a criminal conviction, "we consider the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). For purposes of this inquiry, direct and circumstantial evidence are equally probative. *Id.*

Giles's identity-based challenge boils down to an assertion that, without physical evidence linking him directly to St. Claire's death, the State could not prove he was St. Claire's killer. But

physical evidence is not required to establish identity. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) ("Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence."); *Carillo v. State*, No. 05-09-00310-CR, 2010 WL 2951855, at *5 (Tex. App.—Dallas July 29, 2010, no pet.) (mem. op., not designated for publication) ("Although no physical evidence linked Carrillo to the offense, none was necessary."); *see also Delacerda v. State*, 425 S.W.3d 367, 382 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("Sufficient evidence can support a murder conviction even in the absence of physical evidence such as DNA evidence, fingerprinting evidence, and the murder weapon; thus, such evidence is not required to obtain a conviction.").

The State presented the medical examiner's undisputed testimony that St. Claire's death was a homicide. The State also presented the video evidence. When paired with Giles' admission to being the person seen entering and exiting St. Claire's unit, this evidence gave strong support for a rational juror to infer Giles is St. Claire's killer.

We likewise reject Giles's intent-based challenge. Giles correctly points out that the State was required to prove he intentionally killed St. Claire. *See* TEX. PENAL CODE § 19.03(a)(2); *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986). But "specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (citations omitted). When "a deadly weapon is used in [a] deadly manner, the inference is almost conclusive that [the perpetrator] intended to kill." *Id.* A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17)(B).

Here, the medical examiner testified St. Claire suffered a hinge fracture to his skull—a "devastating injury" you ordinarily see in "traffic wreck situations." In order to inflict such an

injury, the medical examiner testified the killer must have struck St. Claire in the head with a relatively heavy object, using a tremendous amount of force. Whatever object was used, according to the examiner, was "pretty much by definition" a deadly weapon. We agree. *See id.*

Based on the medical examiner's testimony, a rational jury could have found that Giles struck St. Claire in the head with a heavy object, using an amount of force sufficient to severely fracture his skull. The jury thus could infer beyond a reasonable doubt that Giles acted with the specific intent to kill St. Claire. *See id.*; *see also Fisher v. State*, No. 05-07-01133-CR, 2008 WL 3020815, at *3 (Tex. App.—Dallas Aug. 6, 2008, not pet.) (not designated for publication) (evidence was sufficient to infer specific intent where it showed defendant used an unspecified "wooden object" to inflict blunt-force injuries resulting in death).

Giles admitted burglarizing St. Claire's unit. A rational jury could have found that Giles intentionally killed St. Claire in the course of that burglary. *See* PENAL § 19.03(a)(2). We therefore conclude the evidence was legally sufficient to support Giles's conviction for capital murder, and we overrule Giles's first two issues.

### The trial court was not required to sua sponte instruct the jury on the lesser-included offenses of murder and manslaughter.

In his third and fourth issues, Giles contends the trial court erred by not sua sponte instructing the jury on the lesser-included offenses of murder and manslaughter. But "a jury instruction on a lesser included offense is not 'applicable to the case' absent a request by the defense for its inclusion in the jury charge, and the trial court does not have a duty to *sua sponte* instruct the jury on a lesser included offense." *Gipson v. State*, No. 05-16-01065-CR, 2017 WL 4247965, at *2 (Tex. App.—Dallas Sept. 25, 2017, no pet.) (mem. op., not designated for publication) (citation omitted) (quoting *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010)). "A defendant who did not request an instruction on a lesser included offense waives his right to complain on appeal that the trial court was required to give the instruction." *Id.* Giles did

not request an instruction on the lesser-included offenses of murder and manslaughter, and waived his third and fourth issues.[1] *See id.*

**The record is insufficient to demonstrate ineffective assistance of counsel.**

In his fifth and sixth issues, Giles asserts his trial counsel was constitutionally ineffective under the principles established in *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Cronic*, 466 U.S. 648 (1984). To successfully assert a claim under *Strickland*, Giles must show by a preponderance of the evidence both that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687; *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). To demonstrate such prejudice, Giles must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893.

Ineffective assistance can nevertheless be presumed prejudicial under *Cronic* where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. For this presumption to apply, counsel's failure to test the prosecution's case must be "complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). This standard distinguishes between shoddy representation and no defense at all. *In re K.B.*, No. 05-19-00700-CV, 2019 WL 5485320, at *6 (Tex. App.—Dallas Oct. 25, 2019, no pet. h.) (mem. op.). "Bad lawyering, regardless of *how* bad, does not justify applying *Cronic*." *Id.* (quoting *In re S.B.*, No. 02-18-00310-CV, 2019 WL 1388760, at *15 (Tex. App.—Fort Worth Mar. 28, 2019, pet. denied) (mem. op.)). The defendant must "establish that counsel was not merely incompetent but inert." *In re K.B.*, 2019 WL 5485320,

---

[1] Even if Giles had not waived the issues, there is no affirmative evidence indicating Giles was guilty of *only* murder or manslaughter. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (explaining that to be entitled to an instruction on a lesser-included offense, there must be evidence "directly germane to the lesser-included offense . . . ris[ing] to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense" and adding that "[m]eeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense").

at *6 (quoting *In re S.B.*, 2019 WL 1388760, at *15). *Cronic* claims are epitomized by the inert or potted-plant lawyer who, although physically and mentally present in the courtroom, fails to provide—or is prevented from providing—*any* meaningful assistance. *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005).

Giles asserts *Cronic* should apply here because his trial counsel "wholly failed to subject the State's case to meaningful adversarial testing." Yet Giles acknowledges his counsel: (1) filed an omnibus pre-trial motion; (2) argued that motion and obtained rulings before trial; (3) made objections to the State's evidence (some of which, we note, were sustained); (4) cross-examined all but one of the State's witnesses; and (5) filed a motion for new trial. The record reveals Giles's counsel reviewed discovery, actively participated in jury selection, moved for an instructed verdict of acquittal at the appropriate time, admonished Giles about his right to remain silent or testify,[2] and made appropriate arguments to the jury. Regardless of whether Giles's counsel was effective in each of those pursuits, he was not "inert." *See Ex parte McFarland*, 163 S.W.3d at 752; *In re K.B.*, 2019 WL 5485320, at *6. *Cronic* does not apply.

As for the *Strickland* claim, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Perez*, 310 S.W.3d at 893. And if there is no record of trial counsel's explanation for the conduct in question, we "assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). For this reason, a direct appeal—where the record is generally undeveloped on these issues—rarely provides the proper vehicle for asserting a *Strickland* claim, which must be firmly grounded in and affirmatively demonstrated by the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

---

[2] As we discuss later, Giles's counsel appears to have incorrectly explained the range of punishment during that admonishment.

Here, the record is insufficient to fairly evaluate whether either prong could be satisfied. Giles contends:

> The record is devoid of any evidence that trial counsel investigated Appellant's case or attempted to meaningfully test the State's evidence. There is no evidence that he hired an investigator, that he explored any prior relationship between Appellant and the complainant, that he tested any aspect of the video surveillance footage by expert or chain of custody, or that he attempted to ascertain any timeline related to the decomposition of complainant's body.

This complaint encapsulates the reasons courts generally wait to decide ineffectiveness issues until after the parties have engaged in the record-creating work that is the subject of habeas. We can imagine strategic motives for avoiding each of these topics in the trial. *See Andrews*, 159 S.W.3d at 101. Because the record does not affirmatively establish both deficient performance and prejudice, we overrule these complaints. *See Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 892–93.

Further, Giles complains his counsel did not file any "substantive motions," request discovery under the Michael Morton Act, or conduct pre-trial hearings. But he does not specify which motions, hearings, or discovery requests counsel should have pursued, nor does he explain how any of those pursuits would have affected the outcome of the trial. *See Arevalo v. State*, No. 05-18-00126-CR, 2019 WL 3886650, at *9 (Tex. App.—Dallas Aug. 19, 2019, no pet. h.) (mem. op., not designated for publication) (rejecting similar arguments concerning pretrial motions and discovery). Counsel did file an omnibus pretrial motion, and the trial court granted nearly all of the relief requested in that motion. And the record shows Appellant's counsel told the trial court he had discussed discovery extensively with the prosecution, adding that "the State . . . has tendered a ton of materials for discovery, videos, photographs, [and] reports," and "I believe that I have seen everything that [the State] has." The State affirmatively represented to the trial court that it had turned everything it had over to the defense. On this record, these complaints show neither deficient performance nor prejudice.

–8–

Giles also complains his "[c]ounsel actively misadvised [him] about the penalty range when [he] was deciding whether to testify." This complaint stems from an isolated comment counsel made while he was admonishing Giles on the record about his right to testify: "I told you that this is a -- obviously, a capital murder trial, and the result of this case is the most severe, an imposition of a sentence of death. So it's one of those decisions that has to be taken very seriously." Although the State did not seek the death penalty in Giles's case, the record is insufficient to show deficient performance for the over-warning or prejudice therefrom. Counsel referred to his and Giles's discussions regarding the decision to testify "over the last several months," and that Giles had "gone back and forth" on that decision. Giles indicated no disagreement with any of this and stated he did not "want to testify," though he indicated his counsel had not stated his exact reason for not wanting to testify. The record contains no indications of what maximum-punishment advice counsel may have previously given Giles.

From this record, we cannot sufficiently credit Mr. Giles's appellate issue claiming, in substance, that he was making his decision whether to testify in real time while his lawyer put the required warnings and advice on the record. If anything, the record indicates Giles had been considering the issue for months, as he should have been doing, and as effective counsel would have urged him to have done. Also, during jury selection, the prosecutor, the defense lawyer, and the court all said this was not a death penalty case. *See* TEX. PEN. CODE § 12.31(b) (requiring this disclosure). The statement that the punishment for capital murder could be death when the State did not seek the death penalty did not sufficiently prejudice Giles here, though a developed record on habeas may demonstrate otherwise.

Finally, considering the cumulative effect of counsel's performance, and finding a record insufficient to support deficient performance or prejudice, we overrule Giles's fifth and sixth

issues. *See Thompson*, 9 S.W.3d at 813–14 & n.6; *Ex Parte Welborn*, 785 S.W.2d 391, 393, 396 (Tex. Crim. App. 1990).

**Giles did not preserve an objection to the constitutionality of his sentence.**

In his final issue, Giles contends his sentence of mandatory life without parole is unconstitutional. We need not address this issue because it was not preserved through a timely request, objection, or motion in the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.) (citing *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996)).

**The judgment should be modified to reflect the correct offense of conviction**.

We note that the trial court's judgment states the offense of conviction as "CAPITAL MURDER TERRORISTIC THREAT." The indictment charges Giles with murder in the course of committing burglary. *See* PENAL § 19.03(a)(2). The court's charge matches the indictment. Therefore, we modify the judgment to remove reference to "TERRORISTIC THREAT" and add reference to "BURGLARY" as the predicate crime for capital murder. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

Having overruled each of Giles's issues, we affirm as modified.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180865F.U05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONALD RAY GILES, Appellant

No. 05-18-00865-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F16-24162-K.
Opinion delivered by Justice Carlyle.
Justices Pedersen, III and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Reference to "TERRORISTIC THREAT" in the description of the offense of conviction is removed and replaced with "BURGLARY."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of December, 2019.